**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


<u>Andre R. Levesque</u>

     v.                                                   Civil No. 09-cv-248-JD

<u>State of New Hampshire, et al.</u>[1]


<u>Andre R. Levesque</u>

     v.                                                   Civil No. 09-cv-418-SM

<u>State of New Hampshire</u>


<u>Andre R. Levesque</u>

     v.                                                   Civil No. 09-cv-419-PB

<u>State of Vermont, et al.</u>[2]


<u>Andre R. Levesque</u>

     v.                                                   Civil No. 09-cv-427-PB

<u>Marble Valley Wind Co., et al.</u>[3]

---

[1]In addition to the State of New Hampshire, Levesque has named the following defendants in this action: Concord Hospital, the Concord Police Department, the New Hampshire State Police, the United States of America, Riverbend 24-Hour Emergency Services, and the Champlain Valley Physicians Hospital.

[2]In addition to the State of Vermont, Levesque has named the United States of America as a defendant in this action.

[3]In addition to the Marble Valley Wind Co., Levesque has named the following defendants in this action: NBT Bank, Champlain National Bank, and Adirondack Bank.

Andre R. Levesque

  v.          Civil No. 09-cv-429-PB

Shelburne Police Department, et al.[4]


Andre R. Levesque

  v.          Civil No. 09-cv-430-SM

Town of Ellenburg, New York


Andre R. Levesque

  v.          Civil No. 09-cv-434-PB

Fletcher Allen Health Care


Andre R. Levesque

  v.          Civil No. 09-cv-435-SM

Merrimack County Department of
Corrections


Andre R. Levesque

  v.          Civil No. 09-cv-437-JL

---

[4]In addition to the Shelburne Police Department, Levesque has named the following defendants in this action: the State of Vermont, the Vermont State Police, and the Rutland County Sheriff's Department.

<u>State of New Hampshire, et al.</u>[5]

<u>Andre R. Levesque</u>

     v.                                    Civil No. 09-cv-438-SM

<u>Merrimack County Department of
Corrections, et al.</u>[6]


<u>Andre R. Levesque</u>

     v.                                    Civil No. 09-cv-453-JD

<u>Merrimack County Department of
Corrections</u>


<u>Andre R. Levesque</u>

     v.                                    Civil No. 10-cv-040-SM

<u>New Hampshire Supreme Court Office of
Attorney Discipline, et al.</u>[7]

---

[5]In addition to the State of New Hampshire, Levesque has named the Concord Housing Authority as a defendant in this action.

[6]In addition to the Merrimack County Department of Corrections, Levesque has named the following defendants in this action: the State of New Hampshire, the United States of America, and the Secure Psychiatric Unit at the New Hampshire State Prison.

[7]In addition to the New Hampshire Supreme Court Office of Attorney Discipline, Levesque has named the Merrimack County Superior Court and the New Hampshire Public Defender's Office as defendants in this action.

Andre R. Levesque

     v.                                    Civil No. 10-cv-041-JD

New Hampshire State Prison, Secure
Psychiatric Unit, et al.[8]

Andre R. Levesque

     v.                                    Civil No. 10-cv-049-PB

State of South Carolina, et al.[9]

## REPORT AND RECOMMENDATION

Andre Levesque has filed numerous cases in this Court.
Because Levesque is incarcerated and proceeding pro se, the
above-captioned complaints are before me for preliminary review
to determine, among other things, whether Levesque has stated any
claim upon which relief might be granted.  See 28 U.S.C. §
1915A(a); United States District Court District of New Hampshire
Local Rule ("LR") 4.3(d)(2).

---

[8]In addition to the Secure Psychiatric Unit at the New
Hampshire State Prison, Levesque has named the State of Vermont
and the State of New York as defendants in this action.

[9]In addition to the State of South Carolina, Levesque has
named the other forty-nine states and the United States of
America as defendants in this action.

4

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997); <u>see also</u> <u>Castro v. United States</u>, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, <u>Erickson</u>, 551 U.S. at 94,

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted). Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

### Background

Andre Levesque has twenty-one lawsuits pending in this Court, all presently pending preliminary review. Fourteen of these twenty-one lawsuits are before me at this time. Levesque has filed motions, in most of the actions filed, requesting that the Court take into account, in considering his claims, the facts

alleged in each of the other pending cases.[10]  Upon review of all

of the cases before me at this time, it becomes clear that the

claims contained and defendants named within each case bear

little relation to the claims and defendants discussed in the

narrative of that case.  While some of the claims are distinct to

particular cases, all of the cases overlap with one another in

that certain themes, explanations and claims are repeated in more

than one case before the Court.  It makes sense, therefore, for

this Court to issue a single Report and Recommendation,

addressing the claims raised in each of the fourteen cases.[11]

The background and discussion contained in this Report and

Recommendation will therefore apply to and include the claims and

defendants in each of the cases presently before me for

---

[10]These motions are docketed as follows: 09-cv-248-JD
(document no. 10); 09-cv-418-SM (document no. 16); 09-cv-419-PB
(document no. 14); 09-cv-427-PB (document no. 16); 09-cv-429-PB
(document no. 15); 09-cv-430-SM (document no. 14); 09-cv-434-PB
(document no. 10); 09-cv-435-SM (document no. 14); 09-cv-438-SM
(document no. 10); 09-cv-453-JD (document no. 9); 10-cv-040-SM
(document no. 3); and 10-cv-041-JD (document no. 6).

[11]The undersigned is recused from considering two of
Levesque's pending cases, Levesque v. United States of America,
Civ. No. 09-cv-426-PB, and Levesque v. Pfizer, Inc., et al., Civ.
No. 09-cv-428-JL.  Accordingly, this Report and Recommendation
will address only the fourteen cases captioned here, and any
consideration of the other two cases will be made exclusively by
the presiding judge in that case.

preliminary review.

Levesque has also filed a number of motions that have been docketed in one or more of his open cases.  I have read the motions pending in the above-captioned cases and find that, in general, they contain factual allegations more appropriately construed as addenda to the complaints in these actions, and that the relief sought in those motions is generally repetitive of the relief sought in the complaints.  Accordingly, these motions will be accepted in the cases as addenda to the complaints and considered therewith.  In the Order issued simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"),[12] I will direct that the Clerk's Office amend the docket

---

[12]The motions pending in the cases captioned above to be redocketed as addenda to the complaints filed include: Motion in Limine (09-cv-418-SM document no. 5) (09-cv-419-PB document no. 4) (09-cv-427-PB document no. 4) (09-cv-429-PB document no. 4) (09-cv-430-SM document no. 4) (09-cv-435-SM document no. 3); Motion to Extend Time (09-cv-418-SM document no. 4) (09-cv-419-PB document no. 3) (09-cv-427-PB document no. 3) (09-cv-429-PB document no. 3) (09-cv-430-SM document no. 2) (09-cv-435-SM document no. 2); Motion for Immediate Consideration and Ruling (09-cv-248-JD document no. 4) (09-cv-418-SM document no. 7) (09-cv-419-PB document no. 7) (09-cv-427-PB document no. 9) (09-cv-429-PB document no. 7) (09-cv-430-SM document no. 7) (09-cv-434-PB document no. 4) (09-cv-435-SM document no. 9) (09-cv-437-JL document no. 5) (09-cv-438-SM document no. 4) (09-cv-453-JD document no. 3); Motion for Immediate Hearings (09-cv-248 document no. 6) (09-cv-418-SM document no. 9) (09-cv-419-PB

in these cases to reflect that these documents, initially
docketed as motions, are addenda to the complaints in the cases
in which they are filed.

The complaints, and addenda thereto, filed in the above-
captioned matters, lack clarity and are largely difficult to
decipher.  After reviewing each of the cases and applying the
liberal standard of review afforded to pro se filings, I have

---

document no. 9) (09-cv-427-PB document no. 11) (09-cv-429-PB
document no. 9) (09-cv-430-SM document no. 9) (09-cv-434-PB
document no. 6) (09-cv-435-SM document no. 9) (09-cv-437-JL
document no. 7) (09-cv-438-SM document no. 6); Motion (09-cv-248-
JD document no. 8); Motion for Restraining Order Against Vermont
(09-cv-429-PB document no. 16); Motion for Temporary Restraining
Order (09-cv-430-SM document no. 15); Motion for Extra
Consideration/Emergency Relief (09-cv-437-JL document no. 13);
Motion to Detain (10-cv-041-JD document no. 2); Motion for
Temporary Restraining Order (10-cv-041 document no. 3); Motion
for Emergency Hearing With United States Supreme Court (10-cv-
049-PB document no. 2); Motion to Have Social Security
Administration Produce File Regarding Plaintiff's Money Grant
(10-cv-049-PB document no. 3); Ex Parte Motion to Show
Humanity/Freeze and Seize Assets (09-cv-427-PB document no 6);
Motion for Restraining Order (09-cv-418-SM document no. 12);
Motion to Produce Names (09-cv-418-SM document no. 13); Motion to
Cease & Desist and for Emergency Hearing (09-cv-418-SM document
no. 14); Motion to Show Cause (09-cv-418-SM document no. 15);
Motion to Produce Video (09-cv-418-SM document no. 16); Motion to
Freeze Assets (09-cv-418-SM document no. 17); Motion to Compel
Video Production (09-cv-418-SM document no. 18); Motion to Compel
(09-cv-418-SM document no. 19); Motion to Detain (09-cv-418-SM
document no. 20); Motion for Immediate Federal Intervention (09-
cv-418-SM document no. 21); Motion to Block (09-cv-419-PB
document no. 16); and Motion for Immediate Emergency Restraining
Orders Against New Hampshire, Vermont, and New York (09-cv-437-JL
document no. 19) (10-cv-041-JD document no. 7).

construed the facts alleged by Levesque as follows.

A.    Current Status

Levesque, a New York State resident for fifteen years, has recently been an inmate at the Merrimack County House of Corrections ("MCHC"), and at the Secure Psychiatric Unit at the New Hampshire State Prison ("SPU").  Levesque is currently incarcerated at SPU.  Levesque was initially detained at the MCHC pursuant to a misdemeanor charge of criminal threatening. Levesque has been found incompetent to stand trial in the state courts of New Hampshire.  Levesque is represented by counsel in the state criminal matter.  The Office of the Public Guardian has also been appointed to be Levesque's guardian.  Levesque is in the process of appealing the guardianship decision to the New Hampshire Supreme Court.

B.    Vermont

Levesque was born in Burlington, Vermont, and spent some years of his life there.  While in Burlington, Levesque apparently had a discordant relationship with an individual with the last name Soychak who, when Levesque was a boy, assaulted him and then went on to become a South Burlington, Vermont police

officer and a member of the "Police Union."  Despite having been assured that Soychak's former harassment of him would not continue, Levesque claims that Soychak continued to harass him as an adult in a variety of ways.  Levesque credits this harassment with the issuance of twenty-one "bogus" arrest warrants against him, and an effort to have him deemed to be mentally ill so that various mental health providers would be able to foist psychotropic medication on him.  Levesque claims that, due to his acrimonious relationship with Soychak, he has been stopped by law enforcement officers from various agencies in Vermont who have, among other things, seized his handicapped parking permit and rubbed it into the ground, assaulted him, and repeatedly threatened him in order to keep him quiet about his issues with Soychak.  Levesque also complains of Vermont law enforcement officers harassing him, arresting him on false charges, failing to protect him, and failing to prosecute his assailants.

Levesque states that one or more members of the Shelburne, Vermont Police Department improperly charged him with driving while intoxicated and refused to take his statement when he was assaulted by two men.  Levesque complains that the Williston, Vermont Police Department improperly charged him with driving while intoxicated, as did the Rutland County Sheriff's

Department.  Levesque asserts that members of the Washington
County Sheriff's Department laughed at him when he complained
about their discrimination against him in court.

Levesque further connects all of the mistreatment he
experienced at the hands of Vermont law enforcement officials to
conflicts he has had with Fletcher Allen Health Care, a mental
health treatment provider connected to the University of Vermont,
and several of the doctors employed there.[13]  Levesque now
complains that unnamed people employed at Fletcher Allen Health
Care coerced him into undergoing a scan of his brain by
intimidating and threatening him.  Levesque states that,
statistically, those who undergo the scan have a substantial risk
of developing a brain tumor, and that he would have, for that
reason, refused the scan, except that he was threatened, which is
why he underwent the procedure.  Because he asserts that the
image of his brain was improperly obtained, Levesque contends
that the image constitutes stolen property.

Apparently also attributable to his prior conflict with

---

[13]Levesque previously sued Fletcher Allen Health Care and a
number of its doctors, including several of those mentioned in
Levesque's various pleadings, in this Court.  See Levesque v.
Vermont, No. 09-cv-055-SM.  That matter was dismissed on November
30, 2009.  See id. (document no. 23).

Vermont law enforcement and Fletcher Allen Health Care is the fact that Levesque's Vermont driver's license has been suspended indefinitely, even though he has paid hundreds of dollars in motor vehicle fines and a $50.00 reinstatement fee.  Levesque states that he has a New York driver's license but that he is unable to drive in Vermont because his driving privileges there remain suspended.  Levesque seems to feel that he will have to submit to mental health care in Vermont in order to have his Vermont driving privileges reinstated.

Levesque also complains that, on December 5, 2007, various people in Vermont, at both Fletcher Allen Health Care, Howard Mental Health, and the Commission on Mental Health, knowingly discharged him from their care and into the street during a snowstorm although he had nowhere to go.  Levesque claims that, due to a disabling skin condition, he was barely able to walk, and could not drive because his car had a broken window.  Levesque, in response, told his discharging doctor, Dr. Duncan,[14] to "call your lawyer."  Because of this statement, Levesque claims he was falsely accused of threatening Dr. Duncan.

---

[14]Dr. Duncan is also referred to in various pleadings and filings as Dr. Dunken and Dr. Durken, but it appears these are all the same individual.

13

Levesque also asserts that Doctors Duncan, Munson and Sympatico endangered him by forcing him to walk without food, phone, or transportation, knowing that his skin condition rendered him unable to walk.  Levesque claims that Howard Mental Health violated a confidentiality agreement with him, but offers no further specifics.

C.   Epidermalysis Bullosa Simplex Weber-Cockayne

Levesque indicates that his vulnerability to mistreatment by medical and mental health providers stems, at least in part, from a disabling skin condition called Epidermalysis Bullosa Simplex Weber-Cockayne ("EBSWC").  This condition, present since Levesque was a child, is a genetic instability of the skin resulting in blistering, sores and burn-like skin reactions to trauma, however slight, friction, extreme temperatures, and other environmental factors.  Levesque claims that this disability causes him extreme and persistent pain, and that as a result of this disability, he has been granted social security disability benefits by the Social Security Administration as well as a disabled parking permit.  Levesque has included in his filings a letter from Dr. Janet Hinzman, a dermatologist who diagnosed him with EBSWC in November 2001.  Dr. Hinzman's letter indicates that the condition is marked by skin blistering with pressure or friction which is

14

slow to heal.  The letter indicates that scarring or secondary infection may be an issue in people with EBSWC but does not indicate that Levesque has suffered from those particular issues. The letter further indicates that there is no successful treatment for EBSWC, and that those afflicted should avoid long periods of standing or walking.

D.    <u>New York</u>

Levesque owns property in Ellenburg, New York, consisting of 97 acres and a partially finished residence.  It is Levesque's intention to obtain a loan, secured by his equity in his property, to finish the house.  Levesque would like to produce electricity on his property utilizing a "hydroelectric synchronizalation" system of his own design, but various people and institutions in Vermont have rendered him unable to obtain patents to those inventions due to his conflict with Soychak.

Because his property sits on the windiest spot in Ellenburg, Levesque states that the Marble Valley Wind Company ("MVWC") is attempting to purchase some or all of Levesque's property to erect windmills that will produce electricity.  Wanting instead to institute his own energy production plant based on his invention, Levesque has declined to sell his property to MVWC.

Levesque states that in May 2009, he went to the State

15

Police in Plattsburgh, New York and asked for protection, presumably from those who wanted to obtain his property.  He

claims the State Police officers did not protect him.  Levesque also claims that the State Police officers assaulted him.

Levesque attempted to obtain loans from three banks serving the Ellenburg area: NBT Bank, Champlain National Bank, and Adirondack Bank.  Although NBT Bank gave Levesque a $10,000 loan, none of the banks granted him the total funds he requested. Levesque claims that the banks were working with MVWC in its efforts to build windmills, and that the loans were denied both in retaliation for Levesque's refusal to cooperate with that project, and due to discrimination against Levesque for having a disability.

At some point prior to May 15, 2009, angry because he had been turned down for a loan and because a bank fee had been erroneously levied against him, Levesque went into the NBT Bank and stated, among other things, that he ought to cut the throats of everyone in the town of Ellenburg.  Levesque then went to MVWC and reiterated that sentiment to a female employee there. Levesque was arrested and charged with criminal threatening due to these statements, statements Levesque characterizes as

16

warnings rather than threats.  In addition, a restraining order
issued in New York preventing Levesque from having any contact
with the female MVWC employee who heard his statement.  Levesque
was accused of violating that order by approaching the woman with
a knife while he was bleeding from the face.  Levesque denies
those allegations and asserts that any violation of the order was
inadvertent because he didn't know the woman or anything about
her, except where she worked.  When Levesque was arrested on the
charges related to the alleged threats against the woman, he was
detained at the Clinton County Correctional Facility ("CCCF") in
Plattsburgh, New York, where he remained for approximately six
weeks, from about May 15, 2009 to July 2, 2009.

On June 10, 2009, during his detention at CCCF, Levesque
called a female officer there a "fucking deranged whore."  In
response to both Levesque's insult to the female officer and to
other grievances Levesque had expressed, one or more male
officers removed Levesque from his cell, called him names and
proceeded to punch and kick him, causing him injuries.
Levesque's skin condition was also exacerbated by the incident.
Officers that didn't participate in the beating of Levesque
observed the beating and did nothing to interfere with or stop
the assault.  Levesque also claims that the CCCF nurse failed to

17

report the assault or write a truthful account of how Levesque
was injured.

Levesque subsequently appeared before Judge Prevo in the
Ellenburg Town Court.  Levesque attempted to complain about the
June 10, 2009 assault to Judge Prevo, and to explain that any
violation of the restraining order was inadvertent.  Judge Prevo
ignored Levesque's assertions, and told Levesque that the court
would only rule on whether to detain Levesque for an additional
90 days.  The court also ordered a psychiatric evaluation of
Levesque to determine his competency to stand trial.  The
psychiatrist performing that evaluation determined that Levesque
was not competent to stand trial.  Levesque believes that his
criminal case in New York is still open, and asserts that he
wishes to enter a no contest plea in that case or have the case
dismissed, and that he is being denied the opportunity to resolve
the matter.

Levesque states that, while he was at CCCF, officials there
did not give him his pain medication or the cream he needs for
his feet.  Levesque claims that an unnamed CCCF official conceded
to him that they would not accommodate his disability, while
another CCCF official refused to acknowledge his EBSWC as a

disability or as more than a simple blister.  Levesque claims an
individual at CCCF named Mr. Cumber even teased him by offering
him only Band-Aids for his feet, knowing that Levesque actually
needed, and did not have, proper shoes and socks.  At some point
after his release from CCCF, Levesque requested that the Federal
Bureau of Investigation ("FBI") in Albany, New York, investigate
the assault that he suffered at CCCF.  Levesque believes that the
FBI has not acted on his request.

When Levesque was released from his incarceration in New
York, he states that he went to an emergency room there because
of the injuries he received during the June 10, 2009 assault.
From the emergency room, he was sent to a motel, either by
government authorities seeking to transition him out of jail or
by the hospital.  Levesque asserts that he was forced to walk to
the motel, which he was barely able to do due to his skin
condition, and that the motel was disgusting.  Levesque called
his mother, who lives in Bow, New Hampshire, and had her come get
him and drive him to New Hampshire.

E.  <u>New Hampshire</u>

On July 20, 2009, Levesque went to the Concord Hospital
emergency room to obtain treatment for his blistering feet and
for pain related to his "gastro" and his lymph nodes "acting up."

19

Levesque states he also had an exposed nerve ending in his tooth and a cut lip that required treatment.  Levesque complained to the doctor at Concord Hospital that he had a blister under his skin near his navel that needed to be repaired as it was leaking bile.  The doctor told Levesque that something on his body was "slightly herniated" but did not provide treatment.  Levesque also states that he pointed to the air conditioning unit in the emergency room, to indicate that his skin condition was sensitive to temperature.  Levesque claims that in response, the doctor "flipped out."  Levesque wanted the doctors to treat him by sending him to a warm sandy beach for 12-20 weeks to stop the further destabilization of his skin cells.  Levesque states that the doctors at Concord Hospital refused to listen to him or take him seriously regarding his skin condition, and discharged him from the emergency room at 1:00 a.m. with only a referral to the Riverbend Mental Health 24-hour emergency service.

Because he was forced to walk after leaving the hospital, Levesque developed open sores on his feet.  On the way to Riverbend, Levesque stopped in front of this courthouse and, in view of the video cameras attached to the front of the

courthouse, displayed and popped blisters on his feet.[15]

Levesque believed that Riverbend intended to medicate him with psychotropic medication that would do him no good. Levesque advised the person he spoke with at Riverbend to get a lawyer because he intended to sue the organization in federal court. Riverbend personnel interpreted this statement as a threat, which Levesque denies. Levesque claims he only stated his intent to file what he believed to be a legitimate lawsuit.

While in Concord, Levesque alleges that New Hampshire State Police Troopers saw him driving one night, and swung their own car around and followed him into Bow. Levesque then left an angry and admittedly rude message on the voice mail of the New Hampshire State Police complaining that he had been followed. Levesque stated in his message that he intended to sue those responsible for following and harassing him. Levesque attributes his rudeness to his frustration over being continuously and needlessly harassed by the New Hampshire State Police since his arrival in New Hampshire. Although the police allege the call

---

[15]Levesque states he did this intentionally in view of the cameras so that this Court would have a record of the condition of his feet, and he invites the Court to review the videotape. For purposes of preliminary review, I credit Levesque's assertions as true and therefore, there is no need to review the videotape at this time.

was threatening, Levesque characterizes the call as a warning and asserts that he did not commit any crime.

Levesque states that as a result of his behavior, the State Police wanted to place a forty-eight hour hold on him, possibly to have his mental status evaluated.  Levesque says his mother received a call from the Concord Hospital on July 21, 2009, asking that he return to that facility.  Levesque returned to the Concord Hospital and was arrested later that night by the New Hampshire State Police for criminal threatening for the voice mail message he had left with the New Hampshire State Police.

Levesque was arraigned on the criminal threatening charge in the Concord District Court on July 22, 2009.  At the arraignment, the prosecutor sought to have Levesque detained pretrial and described Levesque as "very violent."  She also referred to a ten-year-old lewdness charge in Levesque's criminal record. Levesque objects to that characterization and claims that both of those assertions were false.[16]

F.    MCHC and SPU

---

[16]Levesque states the accusation of violence emanates from the false charge that he approached the MVWC employee with a knife in New York.  The lewdness accusation stems, according to Levesque, from a charge that he was involved with shoplifting from Victoria's Secret and that his girlfriend's minor daughter was also somehow involved.

Levesque was detained pending trial on the misdemeanor criminal threatening charge, unable to post bail.  He was initially detained at the MCHC.  On July 22, 2009, a nurse named "Judy" asked Levesque to sign an authorization for the release of all of his medical records.  Levesque authorized the release only as to his dermatological records from Dr. Janet Hinzman at Central Vermont Hospital.  Levesque did not authorize the release of any other medical records or any mental health records. Levesque asserts that his failure to authorize a broader release of his medical records led MCHC officials to retaliate against him by denying him adequate health care for sixty-four days.

Based on information related to New Hampshire authorities by Vermont and New York authorities, and which Levesque characterizes as slander, Levesque was isolated at the MCHC as the officials there believed that he had mental health issues. As a result of this isolation, he was housed with the population of inmates serving disciplinary sanctions and denied all but 30 - 60 minutes of out-of-cell time each day.  He was also denied access to a phone to call his attorney.  Levesque claims this impaired his ability to obtain adequate representation in his criminal case.  Levesque states that he filed grievances at the MCHC in August 2009 but received no response.

23

Levesque also claims that he attempted to gain permission to place an international call from the MCHC so that he could access an international bank account which, he claims, contains inheritance money that he would use for bail, but MCHC officials denied him access by denying him "kiosk time."  "Kiosk time" appears to be 30 - 60 minutes during the day when inmates can be out of their cell and can access various institutional services, such as use of the telephone.

MCHC Officer Laflamme also told Levesque that he intended to take away his out-of-cell time, which would deny him access to recreation and to showers.  The denial of showers, Levesque claims, would prevent him from being able to properly care for his skin condition.  Levesque protested the denial of his out-of-cell time by making angry statements to an MCHC medical department worker named Judy, which he describes as rude. Levesque was written up for a disciplinary infraction for threatening Judy, which he denies doing.  On December 22, 2009, Levesque was charged criminally for allegedly threatening Judy. That charge is also pending.

On August 4, 2009, during a discussion of his sleep issues, Levesque states that Judy became rude and verbally abusive when Levesque refused to speak with her.  On August 5, 2009, Paul, a

24

nurse practitioner, offered to prescribe Zyprexa or Xanax to help Levesque sleep.  Levesque declined, informing Paul that the medications are not sleeping pills, and that Levesque preferred

Valium, a medication that had previously been prescribed to him.[17]

On both August 10 and 11, 2009, Levesque claims that two nurses at the MCHC were instructed by Judy not to give Levesque food to take with his pain medication, Vicoprofen.  As a result, Levesque claims that he spent those two nights vomiting, a situation that he has characterized as "not dangerous," but still meriting "a sanction."  Levesque says the nurses told him that his food was withheld because she said that the food was supposed to go with the Zyprexa, and he had refused to take Zyprexa for sleep when requested to do so by Judy and another MCHC medical staff member, Paul.  Levesque claims that in addition to Zyprexa, Judy and Paul tried to get him to take Xanax, another medication

---

[17]A letter to Levesque from the state medical board refers to Levesque's complaints about a physician's assistant named Paul Sylvester.  I presume that Mr. Sylvester is the individual referred to here, but will refer to him as "Paul" in this Report and Recommendation.

ordinarily prescribed for mental illness, by telling him that the medications would calm his thoughts and help him sleep.  Levesque filed a grievance on August 11, 2009 about the denial of food with his pain medication.  Two days later, he began to receive crackers and a sandwich on the dinner cart.

On August 15, 2009, a nurse at the MCHC told Levesque that he was being ordered handcuffed because he was refusing to take Ambien, a sleep medication.  The nurse pointed to a "yellowed out" order for Zyprexa, a medication that Levesque had refused. Levesque states that he refused Ambien because he had previously been prescribed Valium.  Paul later changed his prescribed medication to Valium.  On that day, Levesque claims that MCHC Officer Buckland threatened to withhold the food Levesque was supposed to receive with his medication in an effort to harass him.

A nurse practitioner named Trish increased Levesque's Vicoprofen dose and ordered that he receive more food with the medication than he had been receiving.  On August 13, 2009, Trish also ordered that prescribed special footwear, held for Levesque in property storage since his arrival at MCHC, be returned to Levesque in his cell to accommodate his skin condition.  Levesque

had not received the footwear by September 28, 2009.  Levesque
also states he has an acute skin problem on his toe that has gone
unresolved for six months, and a problem with a "multi-pronged
hair follicle" that has troubled him for two years, and that
neither condition has been adequately addressed at the MCHC.  In
October 2009, Levesque alleges that MCHC Officer Dempsey withheld
Levesque's dinner, his recreation time, and food he was supposed
to receive with his medication.

Officers Buckland, Laflamme, and Ankemean told Levesque that
they could withhold his recreation time for up to five days at a
time while he was in the isolation unit, and they did so.  In
addition, on October 18, 2009, MCHC guards took away Levesque's
prescription footwear.

Levesque claims that while at the MCHC he requested playing
cards.  He was not provided with a standard deck of cards, only
small blank pieces of paper and a deck of pinochle cards.

While at the MCHC, Levesque also sought to access the law
library in order to pursue claims that he had been discriminated
against.  MCHC officials told him his discrimination claims were
frivolous and denied him access to the "kiosk."  Levesque
believes the denial of access to the "kiosk" was retaliation for
his efforts to pursue legal claims of discrimination.  Levesque

27

also states that his litigation efforts have been hampered by the
fact that he has been provided only tiny pencils to write with,
and denied postage, paper, a pro se litigant guide, and

photocopies.[18]  Levesque alleges that, due to his skin condition,
using tiny pencils causes him pain.

On October 27, 2009, Levesque was told that he would be
transported to New Hampshire Hospital.  Levesque refused to go.
Levesque claims that Judy had him transferred to SPU on that date
in an effort to have him medicated, and thus "dehumanized."  To
that end, Judy falsely told the SPU staff that Levesque was "very
violent."  Levesque was held in SPU for approximately six weeks,
from October 28, 2009 to December 8, 2009, while he was evaluated
to determine his competency to stand trial and, ostensibly, to
receive further mental health care.

On October 28, 2009, a SPU employee named Emily told
Levesque that he would be subjected to a brightly lit room in a
suicide watch suite, in intensive care for three weeks, because
he had not signed an authorization for the release of his mental

---

[18]Levesque has filed several pencils, each approximately 2
or 3 inches in length, along with his pleadings.  It should also
be noted that a number of the pages in the pleadings filed are
written on paper towels.

health records when he arrived at SPU.  Levesque spent about one week in the suicide watch, stripped of his clothes, offered only finger foods, subjected to "bright light therapy," and hectored about signing a medical release, before he was moved to the infirmary where, he reports, he was relatively comfortable. Levesque complains that, at SPU, he was held in isolation, his access to recreation in the yard was restricted, and he was rarely able to call his attorney.

Levesque asserts that in November 2009, while at SPU, he filed an Inmate Request Slip requesting a discharge from SPU on the grounds that his prescriptions were being "played with."  On November 17, 2009, Levesque filed a grievance complaining that it took three weeks after his transfer from MCHC for him to see a doctor, and that he spent those three weeks in excruciating pain due to skin problems on his feet.  Levesque then saw Dr. John Eppolito who, he says, only examined him for two minutes and did not examine his feet.  Dr. Eppolito refused to even discuss Levesque's condition with him.  Despite that, Dr. Eppolito claimed that he had fully examined Levesque.  Dr. Eppolito also denied Levesque any care or accommodation for his skin condition, including any special diet, footwear, pain medication, or any help for his sleep problems.

29

When Levesque filed a grievance regarding his difficulties with medical care and with Dr. Eppolito, the SPU Administrator, Ken Stevenson, sent Levesque a response indicating that Dr. Eppolito had claimed to have examined Levesque, but that Levesque became belligerent during the examination and had to be escorted back to his room.  Dr. Eppolito also told the Warden that Levesque's skin condition was not emergent.  Levesque states that it was only Dr. Eppolito who was belligerent during the examination, and that Dr. Eppolito did not conduct an examination of Levesque's feet as he claimed.

On November 25, 2009, Levesque filed another Inmate Request Slip inquiring into why he was being disciplined with placement in isolation for having a disability, and complaining about discrimination against him as a disabled person.  Levesque characterized his detention in these conditions as "psychiatric punishment," in that he has been neither been convicted of any crime nor permitted to resolve his pending criminal case. Levesque also complained that a corrections officer improperly turned off his light.  Stevenson responded to Levesque's Inmate Request Slip, stating that Levesque had not been subjected to disciplinary action at SPU, and that he was not being discriminated against for his disability, as he did not,

according to Dr. Eppolito, require any special accommodation.

While Levesque was at SPU, his competency to stand trial was evaluated by Dr. Kinsler.  Levesque describes Kinsler's assessment of his competency as "maliciously conniving manipulative slanderous deranged demented fiction."  Levesque states that Kinsler made a number of false statements about him, specifically, that he had walked away from the evaluation when Kinsler asked about his attorney, that he had threatened Kinsler, and that Levesque posed a danger to himself and others.  Levesque admits that he told Kinsler he intended to sue him for millions of dollars, but, again, does not characterize that as a threat, but as an expression of his intent to engage in lawful conduct.

Kinsler, Levesque claims, was educated at the State University of New York at Buffalo ("SUNY Buffalo").  Levesque insists that various educational institutions, including SUNY Buffalo, the University of Vermont, and the University of Chicago, are engaged in implementing a scheme to improperly subject people to psychotropic medication by teaching its students, falsely, that mental illnesses are real and that the chemicals produced by pharmaceutical companies and labeled "treatment" are legitimate.  Levesque asserts that both of these notions are incorrect, and have been created and perpetrated to

31

profit the pharmaceutical companies who sell the medications.
Levesque states that his objections to being medicated pursuant
to this "bilk and ploy" scheme have only served to give
ammunition to those correctional institution employees who would
seek to quiet him.  Levesque objects to the practice of relying
on diagnoses, which he believes are fictitious, and psychiatric
medication to treat people who are in despair due to social,
cultural, religious and educational problems in society, and
believes that those despairing simply need understanding, not
medication.  He likens medication to forcing a cultist religion
on vulnerable people like himself.  Levesque describes
psychotropic medication as "poison pills" and states that he, as
a vulnerable person, has been the recipient of pressure from
mental health professionals and others to take such "poison
pills."

Levesque claims that he should be allowed to possess
marijuana and hashish for medical purposes so that he can treat
himself as he sees fit.  Levesque has tried and failed on a
number of occasions to obtain a permit to possess medical
marijuana from the Vermont Department of Safety.

Levesque was returned to the MCHC from SPU on December 8,
2009.  On December 16, 2009, at MCHC, Levesque states that Trish

changed his Vicoprofen dose and ordered that he receive Valium only at bedtime.  Levesque complains that once returned to the MCHC, he was subjected to poor meal delivery, various breaches of security protocol, abusive language and epithets, theft of his property, general indifference toward his safety by MCHC staff, denial of reading material, and denial of medications.  At some point, Levesque alleges that water containing fecal matter was poured under the door of his cell at MCHC.  On December 10, 2009, Emily and Judy at MCHC denied him treatment for sores and pain. Levesque believes his extended incarceration is designed to both forcibly medicate him, for the benefit of the pharmaceutical companies, and somehow persuade him that he has not been discriminated against due to his disability.

Levesque also states that his placement in isolation at the MCHC has inhibited his ability to litigate the matters before this Court.  He states that his notes have been vandalized and destroyed by MCHC personnel.  Further, Levesque claims to have evidence necessary for the prosecution of these claims in his property at the New Hampshire State Prison that he is having difficulty retrieving.  Levesque claims that on February 12, 2010, a group of MCHC guards destroyed certain items in his cell that he intended to use as evidence in his federal complaints.

33

In addition, the guards took away his prescription footwear.

On February 20, 2010, Levesque poured water on a nurse's cart, leading to a disciplinary charge of assault.  Levesque

appeared at his disciplinary hearing and there dumped the officer's coffee on his log book.

Levesque was transferred back to SPU in March 2010.  On April 8, 2010, an officer at SPU took several paper items away from Levesque that he was planning to use in his federal cases and bent Levesque's playing cards.

G.   Defense Counsel and New Hampshire Criminal Case

Levesque was arraigned in Concord District Court on July 22, 2009.  Attorney Donna Brown was appointed to represent him. Levesque met briefly with Attorney Brown shortly after arriving at the MCHC.  At that time, Attorney Brown, Levesque alleges, improperly formed the opinion that Levesque was incompetent to stand trial and that he was delusional.  Levesque states that he told Attorney Brown that he had several lawsuits pending against doctors but, rather than checking the accuracy of this statement, Attorney Brown incorrectly concluded that the lawsuits were a delusion.  In fact, at least two lawsuits had been filed in this Court at that time.  Attorney Brown wrote in her case file that

34

Levesque's incompetency to stand trial was a "no-brainer."

Levesque points to Attorney Brown's failure to take any action to counter the assertions made in court by the Concord District Court prosecutor that Levesque is prone to violence and lewdness as evidence of her unwillingness to effectively assist him. Levesque claims that Attorney Brown failed to challenge that false information because it was proffered to the court by a female attorney, and that Attorney Brown, also a female, was unwilling to contradict another female on behalf of a male client.

Levesque alleges that his trial was originally scheduled in the Concord District Court for September 22, 2009. On September 21, 2009, Brown raised the issue of Levesque's competency to stand trial in the trial court without consulting Levesque on the propriety of raising the issue. Levesque asserts that Attorney Brown placed Levesque's competency into question because she was unwilling to represent him. Because Attorney Brown raised the issue of Levesque's competency on September 21, 2009, no trial was held on September 22, 2009. The Concord District Court judge directed that Levesque be treated for bipolar disorder, a diagnosis Levesque believes to be a fiction created by pharmaceutical companies. Levesque has now been found

35

incompetent to stand trial.

While at the Concord District Court on October 23, 2009, Levesque attempted to argue that his case should be dismissed, but was not allowed to present his argument to the judge.  At that time, the judge directed that Attorney Brown continue to represent Levesque and refused to dismiss the criminal charge against him.

Levesque filed a complaint against Attorney Brown with the New Hampshire Supreme Court Attorney Discipline Office ("ADO").  Levesque feels that the ADO failed to give his complaint adequate consideration.  Levesque further asserts that other attorneys who have represented him or who worked on his cases in New Hampshire and other states, Attorney George Stewart and an unnamed prosecutor in New Hampshire, Attorney Rob Bacchus in Vermont and an Attorney Hessler, acted improperly in refusing to insure that he receives a trial on his charges.  Levesque asserts that each of the attorneys he has named should be disbarred and/or disciplined for refusing to adequately represent him.  A new attorney, Timothy Landry, has been appointed to represent Levesque in Attorney Brown's stead.

Attorney Landry filed a motion to dismiss the criminal charges pending against Levesque.  Levesque claims that Attorney

Landry threatened that Levesque had better "go along with" the motion to dismiss, or he would be returned to SPU.  Levesque states that he wanted to file a complaint about Attorney Landry with the ADO, but did not because he did not believe that the ADO would give his complaint proper consideration.  Levesque complains that Landry will not be able to adequately represent him because he is a colleague of Attorney Brown, and to adequately represent him, Attorney Landry would have to take positions that contradict or cast a bad light on Attorney Brown's statements and actions.

H.   Guardianship Proceeding

At some point, involuntary guardianship proceedings were instituted against levesque in the Merrimack County Probate Court.  In March 2010, Levesque met with Sheila Zaire, the attorney appointed to represent him in the probate court proceedings.  Levesque asked Zakre to call two witnesses from Vermont on his behalf, Erin Finne or Marsha Thompson.  Zakre did not call those witnesses, and they did not appear to testify at the hearing held on the guardianship petition on March 11, 2010. Levesque asserts that Zakre instead colluded with the Assistant Merrimack County Attorney George Stewart to have Levesque's mother sign a form under false pretenses.  Levesque believes that

his mother lies and is unconcerned with his well-being.

Nancy Gallagher, Criminal Mental Health Manager for MCHC, signed an affidavit in February 2010 in connection with the guardianship petition.  In the affidavit, Gallagher stated that information about Levesque's medical history came from Levesque's mother.  Levesque never gave the MCHC medical staff permission to talk with his mother.

At the March 11, 2010 probate court hearing, New Hampshire State Police Trooper Ian Berkley testified that the Clinton County, New York prosecutor said that Levesque had threatened to blow up the federal court.  Levesque denies having said so, asserting that he had only told Clinton County officials that he planned to file a lawsuit against them in federal court. Levesque claims that he was hectored in the hearing, and not allowed sufficient time to cross-examine witnesses or present a defense.

Dr. Lazar, a physician from Chestnut Hill, Massachusetts, met with and evaluated Levesque, and then reported on Levesque's mental status in the probate court proceedings.  Lazar stated that Levesque was not delusional during the meeting and did not have disorganized thoughts.  Lazar noted that Levesque suffered from grandiose and persecutory delusions, an opinion that

Levesque asserts was based on Lazar's review of medical records
from Vermont that Levesque had not released to SPU or MCHC
officials, and other records that Levesque believes are

inaccurate, including Levesque's criminal record and New
Hampshire incarceration records.

     At the conclusion of the hearing, the court granted the
petition and appointed the New Hampshire Office of the Public
Guardian as guardian over Levesque's person.  Levesque has
appealed that decision to the New Hampshire Supreme Court.

I.   Other Facts Alleged by Levesque

     Levesque believes that Attorney Brown, the medical staff at
MCHC and SPU, and officials in Vermont and New York have
conspired together to condemn him to a life on medication in
order to pad the pockets of pharmaceutical companies.  Levesque
further faults all fifty states and the federal government for
allowing this to occur.

     Levesque contends that, instead of jail, he should be in an
apartment subsidized by the government.  Levesque accuses the
State of New Hampshire and the Concord Housing Authority of
failing to prioritize him, as a disabled individual with special
needs, for a subsidized apartment.  Levesque asserts that this

failure amounts to discrimination against him for his disability.

Levesque claims he has been denied meaningful access to various courts.  Specifically, Levesque states that he was scheduled to attend a pretrial conference in this Court concerning Levesque v. State of Vermont, Civ. No. 09-cv-055, and that the prison officials would not transport him to this Court for that conference.  Levesque further claims that a judge in the Chittendon County, Vermont District Court told him that he might be due some compensation from someone in Vermont, but he was denied access to the Superior Court in Burlington, Vermont as he was not permitted to attend a scheduled deposition or hearing in a case before that court.  Levesque also asserts generally that he has been denied access to the Merrimack County Superior Court as a result of discrimination levied against him for his religious and political views, in particular as they relate to pharmaceutical medications for mental illnesses.

### The Claims[19]

Having considered all of the above-captioned pleadings filed

---

[19]The claims, as identified here, will be considered to be the claims raised by Levesque in the above-captioned matters for all purposes.  If Levesque disagrees with the identification of the claims herein, he must do so by properly objecting to this Report and Recommendation within fourteen days of its issuance, or by properly moving to amend his complaint.

by Levesque, and construed all of the allegations in each of the
complaints liberally, I find that Levesque has asserted the
following claims for relief:

Claims Arising out of Levesque's New Hampshire Criminal Case

1.   Donna Brown has violated Levesque's Sixth Amendment
     right to the effective assistance of counsel by: (a)
     improperly raising the issue of his competency to
     stand trial without consulting with him, based upon her
     mistaken and uninvestigated belief that Levesque is
     delusional; (b) preventing Levesque from receiving a
     speedy trial by raising the issue of his competency to
     stand trial; (c) failing to minimize Levesque's
     pretrial detention; and (d) failing to counter the
     Concord District Court prosecutor's assertions that
     Levesque is prone to violence and lewdness.   See 09-cv-
     248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-
     cv-434-PB; 09-cv-437-JL; 09-cv-438-SM; 09-cv-453-JD;
     10-cv-040-SM.

2.   Timothy Landry has violated Levesque's Sixth Amendment
     right to the effective assistance of counsel by: (a)
     insisting that Levesque consent to litigate a motion to
     dismiss rather than pursuing a prompt trial by
     threatening Levesque with a return to SPU; (b) failing
     to minimize Levesque's pretrial detention; and (c)
     representing Levesque under an actual conflict of
     interest as he is a colleague of Attorney Brown,
     against whom Levesque has filed a complaint with the
     ADO.   See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-
     cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-438-SM;
     09-cv-453-JD.

3.   The Concord District Court has denied Levesque a speedy
     trial on his pending criminal matters, in violation of
     his rights under the Sixth Amendment.   See 09-cv-248-
     JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-
     434-PB; 09-cv-437-JL; 09-cv-453-JD.

4.   Attorney Donna Brown discriminated against Levesque based on his gender by refusing to assert his rights in court where she would have to cross a female prosecutor on behalf of a male client.  See 09-cv-437-JL.

5.   The Concord District Court judges and prosecutors have improperly caused Levesque to be incarcerated pretrial for an unreasonable period of time.  See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-453-JD.

6.   Levesque has been improperly denied the ability to shave and wear street clothes for court appearances in New Hampshire.  See 09-cv-437-JL.

7.   The Merrimack County Attorney's office and/or the office of the Concord District Court prosecutor has engaged in malicious prosecution by initiating a "witch hunt" against Levesque.  See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 10-cv-040-SM.

8.   The prosecutor in the Concord District Court falsely and improperly described Levesque as having a propensity for violence and lewdness.  See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

9.   The Concord District Court judge has improperly directed that Levesque be treated with medication for bipolar disorder.  See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

Claims Against MCHC and MCHC Personnel

10.  Judy and Paul Sylvester of the MCHC medical department improperly gave, or attempted to give Levesque the psychiatric medications Zyprexa and Xanax instead of appropriate sleep medication.  See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL; 09-cv-453-JD.

11.  MCHC officials failed to give Levesque medications that

were prescribed for him at the Concord Hospital
Emergency Room.  See 09-cv-438-SM.

12. Officials at the MCHC have refused to allow Levesque to
    shower for days at a time, which violates: (a) his
    constitutional right to humane conditions of
    confinement, see 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-
    PB; (b) his constitutional right to adequate medical
    care during his confinement, as the denial of showers
    has made it impossible for Levesque to properly care
    for his feet due to his skin condition, see 09-cv-248-
    JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-
    434-PB; 09-cv-437-JL; 09-cv-453-JD; and (c) his right
    under the ADA to have his disabling skin condition
    accommodated.  See 09-cv-248-JD; 09-cv-419-PB; 09-cv-
    427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

13. Officials at the MCHC have failed to provide Levesque
    with footwear that adequately accommodates the skin
    condition afflicting his feet, in violation of his
    rights under the ADA.  See 09-cv-248-JD; 09-cv-419-PB;
    09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL;
    09-cv-453-JD.

14. MCHC officials failed to obtain an ambulance for
    Levesque upon his request that he be transported to the
    hospital.  See 09-cv-438-SM.

15. MCHC officials improperly denied him his property when
    they charged him for damage to a door, denied him
    sandals, failed to provide him with food he ordered
    from the jail commissary, and took his nail clippers
    and silver dollar.  See 09-cv-438-SM.

16. Officials at the MCHC have provided him only tiny
    pencils to write his legal documents which are painful
    to write with due to Levesque's disabling skin
    condition, in violation of (a) the federal
    constitution; and (b) the ADA.  See 09-cv-248-JD; 09-
    cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB;
    09-cv-437-JL; 09-cv-453-JD.

17. MCHC officials have denied Levesque adequate recreation

by refusing to provide him with regular playing cards. See 09-cv-437-JL.

18. Judy at MCHC (a) retaliated against Levesque for refusing to sign an authorization for the release of his medical records by causing Levesque to be provided with inadequate medical care for sixty-four days; and (b) twice directed MCHC nurses not to provide Levesque with the food he is supposed to have with his pain medication, causing him to vomit repeatedly on both occasions, in retaliation for Levesque's refusal to take the medication Zyprexa.  See 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL; 10-cv-041-JD.

19. MCHC Officer Dempsey: (a) failed on one occasion to provide Levesque food with medication that is supposed to be taken with food, see 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL; (b) failed on one occasion to give Levesque dinner, see 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL; and (c) failed on one occasion to provide Levesque with recreation time.  See 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL; 09-cv-453-JD.

20. MCHC Officer Buckland, on one occasion, threatened to withhold food that Levesque was supposed to take with his medication.  See 09-cv-437-JL.

21. MCHC Officers Buckland, Ankemean, and Laflamme withheld recreation time from Levesque.  See 09-cv-437-JL.

22. Levesque was not given adequate access to the telephone at MCHC to make international calls to obtain bail money from international bank accounts.  See 09-cv-437-JL.

23. Levesque has been harmed by MCHC personnel as they are engaged in a conspiracy to gain profit by pushing unnecessary psychiatric medications on vulnerable adults like himself.  See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-453-JD.

44

24. Levesque has been placed in a dirty cell at the MCHC. See 09-cv-438-SM.

25. Water containing fecal matter has been poured under Levesque's cell door at MCHC. See 09-cv-418-SM.

26. Levesque was provided with a broken chair at the MCHC, and was thus forced to stand to eat. See 09-cv-438-SM.

27. Officials at MCHC denied Levesque adequate access to a law library. See 09-cv-437-JL.

28. MCHC officials have failed to respond to grievances Levesque filed in August 2009. See 09-cv-437-JL.

29. Levesque's access to legal research materials has been improperly limited by MCHC officials who have decided that his legal claims of discrimination are frivolous. See 09-cv-437-JL.

30. MCHC officials have improperly limited Levesque's access to a telephone to call his attorney. See 09-cv-437-JL; 09-cv-438-SM.

31. MCHC officials have improperly turned away mail sent to Levesque by his attorney. See 09-cv-248-JD.

32. Judy effected Levesque's transfer to SPU so that he would be improperly given psychiatric medication, in retaliation for his refusal to sign authorizations for the release of his medical records. See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL; 09-cv-438-SM; 09-cv-453-JD.

33. Levesque was improperly held in punitive conditions with inmates serving disciplinary sanctions at the MCHC. See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-438-SM; 09-cv-453-JD.

34. Officials at MCHC improperly gave or attempted to give Levesque Haldol and Atavan without properly advising him of the risks and side effects of the medications.

See 09-cv-435-SM; 09-cv-438-SM.

35. Judy gave Levesque Zyprexa without adequately advising him of the risk of diabetes associated with that medication. See 09-cv-437-JL.

36. Judy and an MCHC employee named Emily failed to give Levesque pain medication that he needed on December 10, 2009. See 09-cv-438-SM.

37. Officials at MCHC violated Levesque's rights under the Establishment Clause of the First Amendment by imposing their zeal for psychiatric medication on Levesque, zeal which Levesque likens to religious fervor. See 10-cv-040-SM.

38. Officials at MCHC violated Levesque's rights under the Establishment Clause of the First Amendment and his Equal Protection rights by imposing unspecified religious doctrine on him in his GED preparation

materials, a prisoner's notebook, and by writing "GOD" backwards on his door. See 09-cv-438-SM.

39. Officials at MCHC retaliated against Levesque for refusing to take Ambien by placing him in handcuffs. See 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL.

40. Levesque was subjected to poor meal coordination at MCHC. See 09-cv-437-JL.

41. MCHC Officer Laflamme caused Levesque to live in inhumane and punitive conditions at the MCHC by threatening to deny him sufficient out-of-cell time to adequately recreate. See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-453-JD.

42. MCHC Officer Laflamme threatened to deny Levesque adequate medical care by not allowing him to shower as often as he needed to properly care for his skin condition. See 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-

PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-453-JD.

43. Judy improperly threatened to issue a disciplinary report against Levesque.  <u>See</u> 09-cv-437-JL.

44. In order to have Levesque medicated and "dehumanized," Judy falsely advised SPU that Levesque was violent, which resulted in his being housed in unnecessarily restrictive and punitive conditions.  <u>See</u> 09-cv-418-SM; 09-cv-437-JL; 09-cv-438-SM.

45. Levesque's access to the courts has been hindered by the MCHC providing him with only tiny pencils, and denying him adequate paper, postage for mailings to the court, and photocopies of his legal papers.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-453-JD.

46. Judy was rude to Levesque and verbally abused him by shrieking at him.  <u>See</u> 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL.

47. While housed at MCHC, Levesque was denied access to property of his being held by the New Hampshire State Prison, including evidence he intends to present in one or more lawsuit before this Court.  <u>See</u> 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-435-SM; 09-cv-437-JL.

48. The MCHC medical department has failed to provide Levesque treatment for a problem with his toe, a problem with a "multi-prong hair follicle," and sores.  <u>See</u> 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-438-SM.

49. Footwear ordered for Levesque in August 2009 by an MCHC nurse, and that he needed to accommodate his skin condition, was not promptly provided to him, in violation of: (a) the federal constitution; and (b) the ADA.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-453-JD.

50. Levesque was improperly written up for a false

disciplinary infraction at the MCHC for threatening Judy.  <u>See</u> 09-cv-437-JL.

51.  Levesque was subjected to several breaches of security protocol at the MCHC as a result of the MCHC staff's general indifference toward his safety.  <u>See</u> 09-cv-437-JL.

52.  Levesque's access to the courts has been hindered because his legal notes have been vandalized and destroyed by MCHC personnel.  <u>See</u> 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-435-SM.

53.  MCHC officials denied Levesque meaningful access to the courts by failing to transport him to a pretrial conference scheduled in this Court in the matter of <u>Levesque v. State of Vermont</u>, 09-cv-055-SM.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

54.  MCHC officials used a stun gun against Levesque on February 12, 2010 to force him to give up his prescription footwear.  <u>See</u> 09-cv-438-SM.

<u>Claims Against SPU and SPU Personnel</u>

55.  Dr. Eppolito at SPU violated Levesque's Fourteenth Amendment right to receive adequate medical care during his pretrial detention by failing to adequately examine Levesque.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-435-SM; 09-cv-437-JL; 09-cv-438-SM; 09-cv-453-JD; 10-cv-041-JD.

56.  Dr. Eppolito at SPU failed to order any treatment or accommodation for Levesque's disabling skin condition, in violation of: (a) Levesque's Fourteenth Amendment right to adequate medical care; and (b) the ADA.  <u>See</u> 09-cv-248-JD; 09-cv-418-SM; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-435-SM; 09-cv-437-JL; 09-cv-438-SM; 09-cv-453-JD; 10-cv-041-JD.

57.  Levesque was subjected to rude treatment from a woman named Emily at SPU.  <u>See</u> 09-cv-438-SM.

58. Levesque has been harmed by SPU personnel as they are engaged in a conspiracy to gain profit by pushing unnecessary psychiatric medications on vulnerable adults like himself.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-453-JD.

59. On April 8, 2010, an unnamed officer at SPU improperly took documents from Levesque that Levesque planned to use in pro se litigation.  <u>See</u> 09-cv-418-SM.

60. Officials at SPU denied Levesque adequate access to a law library.  <u>See</u> 09-cv-437-JL.

61. Officials at SPU denied Levesque access to a telephone for thirty of the thirty-five days he spent there in 2009.  <u>See</u> 09-cv-437-JL.

62. Dr. Kinsler provided a fraudulent psychiatric assessment of Levesque in order to improperly receive compensation for his services from the State of New Hampshire.  <u>See</u> 09-cv-437-JL.

63. Neither SPU administrator Ken Stevenson nor the Warden of the New Hampshire State Prison responded to grievances filed by Levesque in August 2009.[20]  <u>See</u> 09-cv-437-JL.

64. Ken Stevenson improperly placed Levesque in isolation at SPU, which resulted in Levesque being held in a punitive prison setting while he was confined as a pretrial detainee, as Levesque was not allowed more than 30-60 minutes of daily out-of-cell time, was denied access to the yard,[21] was denied adequate access

---

[20]Based on the facts asserted by Levesque, he was at the MCHC, not SPU, in August 2009.  Because I recommend dismissal of this claim on another basis, this discrepancy is not relevant.

[21]Levesque alleges that he was denied access to the yard at SPU for 130 days.  He has not been at SPU for that long, however. I therefore construe the allegation to claim that Levesque was

to showers, and was held under the same conditions as prison inmates serving disciplinary sanctions.  <u>See</u> 09-cv-248-JD; 09-cv-418-SM; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-438-SM; 09-cv-453-JD.

65. Officials at SPU did not allow Levesque to "do business" while he was detained in that facility.  <u>See</u> 09-cv-437-JL.

66. Levesque was improperly held in isolation at SPU in retaliation for complaining that he was being discriminated against based on his disability and for filing grievances.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-438-SM; 09-cv-453-JD.

67. A corrections officer at SPU improperly turned off Levesque's light.  <u>See</u> 09-cv-437-JL.

68. Officials at SPU improperly gave or attempted to give Levesque Haldol and Atavan without properly advising him of the risks and side effects of the medications. <u>See</u> 09-cv-435-SM; 09-cv-438-SM.

69. Officials at SPU violated Levesque's rights under the Establishment Clause of the First Amendment by imposing their zeal for psychiatric medication on Levesque, zeal which Levesque likens to religious fervor.  <u>See</u> 10-cv-040-SM; 10-cv-041-JD.

70. Officials at SPU "played with" Levesque's prescriptions.  <u>See</u> 09-cv-435-SM; 09-cv-437-JL.

71. Levesque experienced severe and persistent pain upon his arrival at SPU, but was not seen by a doctor there for three weeks.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-435-SM; 09-cv-437-JL; 09-cv-438-SM; 09-cv-453-JD; 10-cv-041-JD.

---

denied yard time for 130 days, and that during some of those days, he was detained at SPU.

72. At SPU, Levesque was inappropriately stripped of his clothing, subjected to "bright light therapy," and repeatedly hectored while in a suicide watch suite, (a) in an effort to coerce him to sign releases so that SPU officials could obtain his medical records; and (b) in retaliation for refusing to sign those releases.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 10-cv-041-JD.

73. The SPU medical department has failed to treat Levesque for a problem with his toe and a problem with a "multi-prong hair follicle."  <u>See</u> 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 10-cv-041-JD.

74. Levesque was subjected to inadequate medical care at SPU, resulting in his development of a MRSA infection.[22]  <u>See</u> 09-cv-438-SM; 10-cv-041-JD.

<u>Claims Against Other New Hampshire State and Municipal Defendants</u>

75. New Hampshire State Police troopers harassed Levesque by following him while he was driving in Bow, and have repeatedly harassed Levesque since he has been in New Hampshire.  <u>See</u> 09-cv-437-JL.

76. The State of New Hampshire and the Concord Housing Authority have violated Levesque's constitutional and federal statutory rights by failing to find him affordable housing, failing to assist him in looking for an appropriate place to live, and failing to prioritize him as a candidate for government subsidized housing even though he is disabled and requires special accommodations for his disability.  <u>See</u> 09-cv-437-JL.

77. The State of New Hampshire has failed to criminally

---

[22]MRSA is an acronym for Methicillin-resistant Staphylococcus aureus, a bacterial infection that is highly resistant to some antibiotics.

charge people and organizations that have committed
crimes against Levesque, including Attorney Brown and
the Concord District Court prosecutor.  <u>See</u> 09-cv-437-
JL.

78.  The ADO failed to adequately consider Levesque's
complaints against his attorney.  <u>See</u> 09-cv-437-JL; 10-
cv-040-SM.

79.  The Office of the New Hampshire Attorney General failed
to respond to Levesque's complaints of cruelty at the
MCHC.  <u>See</u> 09-cv-438-SM.

80.  Levesque has been discriminatorily denied access to the
Merrimack County Superior Court.  <u>See</u> 10-cv-040-SM.

<u>Claims Against Concord Hospital and Riverbend</u>

81.  The Concord Hospital denied Levesque adequate care
by: (a) discharging him without providing him with a
means of transportation when his medical condition made
it inadvisable for him to walk; (b) failing to send him
to a beach with suntan lotion and soft sand, where his
skin condition could heal; and (c) failing to take his
complaints seriously, resulting in a failure to provide

adequate treatment for his skin condition.  <u>See</u> 09-cv-
248-JD; 09-cv-437-JL.

82.  Riverbend Mental Health Center failed to provide
Levesque with adequate care and instead wrongly accused
him of acting in a threatening manner.  <u>See</u> 09-cv-248-
JD; 09-cv-437-JL.

<u>Claims Arising out of the State of New York</u>

83.  One or more corrections officers at CCCF physically
abused Levesque by punching and kicking him on June 10,
2009.  <u>See</u> 09-cv-430-SM; 09-cv-427-PB; 09-cv-437-JL;
10-cv-041-JD.

84.  Several corrections officers at CCCF failed to protect

Levesque when they witnessed other officers assaulting
him but did nothing to stop the assault.  <u>See</u> 09-cv-
430-SM; 09-cv-427-PB; 09-cv-437-JL.

85.  A nurse at CCCF failed to report the June 10, 2009
assault on Levesque and failed to properly document the
assault in CCCF records.  <u>See</u> 09-cv-430-SM; 09-cv-437-
JL.

86.  Levesque was discriminated against at CCCF because he
filed a grievance regarding the June 10, 2009 assault.
<u>See</u> 09-cv-437-JL.

87.  A female corrections officer at CCCF was verbally
abusive to Levesque.  <u>See</u> 09-cv-437-JL.

88.  Levesque's property in New York should be declared a
sovereign nation, which status should afford Levesque
diplomatic immunity.  <u>See</u> 09-cv-248-JD.

89.  The Champlain Valley Physicians' Hospital in
Plattsburgh, New York failed to provide Levesque with
adequate care.  <u>See</u> 09-cv-248-JD.

90.  The State of New York has failed to criminally charge
people and organizations that have committed crimes
against Levesque.  <u>See</u> 09-cv-427-PB; 10-cv-041-JD.

91.  The NBT Bank, Champlain National Bank, and Adirondack
Bank improperly denied Levesque loans due to his
refusal to sell his land to MVWC.  <u>See</u> 09-cv-427-PB;
09-cv-437-JL.

92.  The NBT Bank, Champlain National Bank, and Adirondack
Bank discriminated against Levesque by denying him
loans due to his disability.  <u>See</u> 09-cv-427-PB; 09-cv-
437-JL.

93.  Levesque has been harmed by SUNY Buffalo, which trains
doctors, including Dr. Kinsler, to diagnose fictional
mental illnesses and prescribe psychiatric medications

as it is engaged in a conspiracy to gain profit by pushing unnecessary psychiatric medications on vulnerable adults like himself.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

94. Mr. Cumber at CCCF teased Levesque by offering him Band-Aids instead of the footwear he needed to accommodate his disabling skin condition.  <u>See</u> 09-cv-437-JL.

95. Levesque was denied adequate footwear at the CCCF.  <u>See</u> 09-cv-437-JL.

96. CCCF officials refused to acknowledge or accommodate Levesque's disability.  <u>See</u> 09-cv-437-JL.

97. CCCF officials took away Levesque's medications upon his admission to that facility, including medicine he needed for pain and cream he needed to treat his skin condition.  <u>See</u> 09-cv-437-JL.

98. One or more members of the New York State Police have assaulted Levesque.  <u>See</u> 09-cv-437-JL.

99. Judge Prevo improperly denied Levesque the opportunity to resolve his open criminal case in the Ellenburg Town Court, and the case should therefore be removed to this Court for purposes of resolving the matter with a no contest plea or a dismissal of the charges.  <u>See</u> 09-cv-430-SM.

100. Officials in New York falsely provided slanderous information to New Hampshire authorities, resulting in Levesque's improper detention.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-430-SM; 09-cv-434-PB; 09-cv-437-JL; 10-cv-041-JD.

101. FBI officials in Albany, New York violated Levesque's rights by failing to investigate or prosecute his assailants at CCCF.  <u>See</u> 10-cv-041-JD.

Claims Arising out of the State of Vermont

102. The Community Health Center in Burlington, Vermont
     failed to provide Levesque with adequate care.  See 09-
     cv-248-JD.

103. Officials in the State of Vermont denied a grievance
     Levesque filed complaining that he was not allowed to
     "do business" in a correctional facility in that State.
     See 09-cv-437-JL.

104. The State of Vermont has failed to criminally charge
     people and organizations that have committed crimes
     against Levesque.  See 09-cv-437-JL; 10-cv-041-JD.

105. Various individuals and organizations in Vermont have
     interfered with Levesque's ability to receive a patent
     for his hydroelectric synchronizalation system.  See
     09-cv-419-PB.

106. Officer Soychak harassed and assaulted Levesque in the
     1970s and 1980s in Vermont, and has continued to harass
     and otherwise victimize him by, among other things,
     having Levesque labeled as mentally ill.  See 09-cv-
     248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-
     cv-434-PB; 09-cv-437-JL; 10-cv-041-JD.

107. Members of Vermont law enforcement agencies have
     harassed Levesque and allowed others to go to
     Levesque's home and commit crimes against him, falsely
     arrested and incarcerated him, and failed to protect
     him or prosecute those who victimize him, due to their
     allegiance to Officer Soychak.  See 09-cv-248-JD; 09-
     cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB;
     09-cv-437-JL; 10-cv-041-JD.

108. One or more members of the Shelburne Police Department
     improperly charged Levesque with driving while
     intoxicated.  See 09-cv-429-PB.

109. One or more members of the Shelburne Police Department
     refused to take Levesque's statement when he was
     assaulted by two men.  See 09-cv-429-PB.

110. One or more members of the Williston Police Department improperly charged Levesque with driving while intoxicated.  <u>See</u> 09-cv-429-PB.

111. One or more members of the Rutland County Sheriff's Department improperly charged Levesque with driving while intoxicated.  <u>See</u> 09-cv-429-PB.

112. Members of the Washington County Sheriff's Department laughed at Levesque when he accused them of discriminating against him in Family Court.  <u>See</u> 09-cv-429-PB.

113. Members of Vermont law enforcement agencies have rubbed Levesque's handicapped parking permit into the pavement.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

114. Members of Vermont law enforcement agencies have waterboarded and poisoned Levesque.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-PB; 10-cv-041-JD.

115. Members of Vermont law enforcement agencies have threatened Levesque.  <u>See</u> 09-cv-419-PB.

116. Levesque's conflicts with Officer Soychak have resulted in the issuance of twenty-one "bogus" warrants for Levesque's arrest in Vermont.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

117. Levesque has been improperly denied permission to possess marijuana for medical purposes in Vermont, which has deprived him of his right to determine his own medical care.  <u>See</u> 09-cv-429-PB; 10-cv-049-PB.

118. Levesque has been harmed by the University of Vermont, which trains doctors to prescribe psychiatric medications, Fletcher Allen Health Care, and a number of individual Vermont doctors, as they are engaged in a conspiracy to gain profit by pushing unnecessary psychiatric medications on vulnerable adults like

himself.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

119. Fletcher Allen Health Care and its employees caused Levesque to undergo a brain scan with significant health risks by coercion and intimidation.  <u>See</u> 09-cv-434-PB.

120. Fletcher Allen Health Care and others who received digital images of Levesque's brain scan are improperly in possession of his property.  <u>See</u> 09-cv-434-PB.

121. The State of Vermont's Commission on Mental Health, Fletcher Allen Health Care, and Howard Mental Health improperly discharged Levesque from mental health treatment.  <u>See</u> 09-cv-429-PB; 09-cv-437-JL.

122. Levesque was endangered by Doctors Duncan, Munson, and Sympatico when they forced him to walk out of treatment without food, a phone, or transportation, knowing that

he was unable to walk due to his disabling skin condition.  <u>See</u> 09-cv-429-PB.

123. Dr. Duncan in Vermont falsely accused Levesque of threatening him.  <u>See</u> 09-cv-427-PB; 09-cv-429-PB; 09-cv-437-JL.

124. Howard Mental Health and Dr. Steingard violated a confidentiality agreement that arose out of previous litigation between Levesque and Howard Mental Health. <u>See</u> 09-cv-429-PB; 09-cv-437-JL.

125. The State of Vermont has improperly refused to reinstate Levesque's Vermont driver's license or driving privileges although he has paid the money and reinstatement fees he previously owed in that State. <u>See</u> 09-cv-429-PB.

126. Vermont courts have twice improperly denied Levesque a speedy trial because he requested certain documents. <u>See</u> 09-cv-437-JL.

127. The Vermont Family Court violated Levesque's rights by performing an illegal abortion with poisonous pills for profit.  <u>See</u> 09-cv-437-JL.

128. Officials in Vermont falsely provided slanderous information to New Hampshire authorities, resulting in Levesque's improper detention.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 10-cv-041-JD.

129. Attorney Rob Bacchus provided Levesque with ineffective assistance of counsel.  <u>See</u> 09-cv-437-JL.

130. Levesque was prevented from pursuing a civil matter in the Superior Court in Burlington, Vermont when he was not permitted to attend a scheduled deposition or hearing in that court.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL; 09-cv-453-JD.


<u>Claims Against Other Defendants</u>

131. Levesque has been harmed by pharmaceutical companies and the University of Chicago, which trains doctors to prescribe psychiatric medications, as they are engaged in a conspiracy to gain profit by pushing unnecessary psychiatric medications on vulnerable adults like himself.  <u>See</u> 09-cv-248-JD; 09-cv-419-PB; 09-cv-427-PB; 09-cv-429-PB; 09-cv-434-PB; 09-cv-437-JL.

132. Assistant Merrimack County Attorney George Stewart failed to insure that Levesque received a fair trial. <u>See</u> 09-cv-437-JL.

133. Attorney Hessler provided Levesque with ineffective assistance of counsel.  <u>See</u> 09-cv-437-JL.

134. All fifty states are liable for allowing psychiatric medication to be improperly dispensed to vulnerable adults and children.  <u>See</u> 10-cv-049-PB.

<u>Claims Relating to Guardianship Proceedings</u>

135. Nancy Gallagher violated Levesque's rights under (a) the Health Insurance Portability, Accessibility and Accountability Act ("HIPAA") Privacy Rule; (b) the Fourteenth Amendment; and (c) State constitutional law when she spoke with Levesque's mother regarding his medical history without his authorization.  <u>See</u> 09-cv-437-JL; 10-cv-041-JD.

136. New Hampshire State Trooper Ian Berkley perjured himself and slandered Levesque on the witness stand. <u>See</u> 09-cv-437-JL; 10-cv-041-JD.

137. Levesque's guardianship hearing violated his due process rights when (a) the guardianship court accepted in evidence a biased report prepared by Dr. Lazar; (b) false police reports and charges were introduced against Levesque; and (c) Levesque did not have enough time to present his case or cross-examine witnesses.

138. Levesque's appointed counsel for the guardianship proceedings, Sheila Zakre, did not provide adequate representation to Levesque as she failed to call two favorable witnesses and improperly collaborated with Assistant Merrimack County Attorney George Stewart to obtain a damaging statement from Levesque's mother without Levesque's consent.

<u>Discussion</u>

I.   <u>Claims Against Vermont Defendants</u>

A.   <u>Collateral Estoppel</u>

Levesque has previously filed suit against a number of the Vermont-based defendants discussed in his present complaints.  In <u>Levesque v. State of Vermont</u>, 09-cv-055-SM, Levesque named, among others, the State of Vermont, Fletcher Allen Health Care, Howard

Mental Health, Dr. Robert Duncan, and Dr. Sandra Steingard, each of whom have been named or implicated as defendants to one or more of Levesque's actions before this Court.  The claims against the State of Vermont were dismissed on the basis that Vermont enjoys Eleventh Amendment immunity from suit.  See id., Order issued June 9, 2009, approving Report and Recommendation (document no. 5).  The claims against Drs. Duncan and Steingard, Fletcher Allen Health Care, and Howard Mental Health, were dismissed on defendants' motions to dismiss for lack of personal jurisdiction.  See id., Order issued November 30, 2009 (document no. 23).

Under the doctrine of collateral estoppel, or issue preclusion, "once a court has actually decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of that factual or legal issue in a suit on a different cause of action involving a party to the first action." Apparel Art Int'l v. Amertex Enters., 48 F.3d 576, 583 n.9 (1st Cir. 1995) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)). Levesque has not alleged any facts in any of his complaints before this Court that would alter this Court's analysis regarding its personal jurisdiction over Fletcher Allen Health

Care, Howard Mental Health, and Drs. Duncan and Steingard.  As
this Court has already decided that it lacks such jurisdiction
over these defendants, Levesque is collaterally estopped from
suing these defendants in this court.  I recommend, therefore
that Fletcher Allen Health Care, Howard Mental Health, Dr.
Duncan, and Dr. Steingard be dismissed from this action.  The
claims numbered 118-124 above name these Vermont healthcare
providers as defendants and I therefore recommend they be
dismissed.

   B. <u>Officer Soychak</u>

   Levesque has identified Officer Soychak as the instigator of
many of the problems he has suffered in Vermont over the years,
particularly at the hands of Vermont law enforcement officers.  I
assume that Levesque attempts to invoke the diversity
jurisdiction of this Court, as he and Soychak live in different
states and Levesque has asserted damages far in excess of the
$75,000 required to so obtain the diversity jurisdiction of this
Court.  <u>See</u> 28 U.S.C. § 1332 (establishing requirements of
diversity jurisdiction).  Levesque's complaints against Soychak,
however, arise out of Soychak's actions in Vermont in the 1970s
and 1980s and are clearly out of this Court's reach by virtue of
Vermont's three-year statute of limitations for personal injury

tort actions, which also applies to civil rights actions under 42
U.S.C. § 1983.  See 12 Vt. Stat. Ann. § 512(4) (establishing
statute of limitations for personal injury tort actions); Shields
v. Gerhart, 155 Vt. 141, 145, 582 A.2d 153, 156 (1990) (citing
Wilson v. Garcia, 471 U.S. 261, 276 (1985) for proposition that
state statutes of limitations apply to civil rights actions
brought pursuant to 42 U.S.C. § 1983).  Levesque has not
described any specific act taken by Soychak since the 1980s that
amounts to an actionable claim.  Accordingly, I recommend that
Levesque's claims against Soychak, numbered 106 and 116 above, be
dismissed as either barred by the statute of limitations or
insufficiently stated.

     C.   Community Health Center

Levesque has asserted generally that the Community Health
Center in Burlington, Vermont has failed to provide him with
adequate medical care.  He has provided no additional detail or
specific information allowing this Court to surmise that any
cognizable claim has been stated against that defendant.
Accordingly, I recommend that Levesque's intended claim against
the Community Health Center, numbered 102 above, be dismissed.

     D.   Claims Naming No Individual Defendant in Vermont

The remainder of Levesque's allegations against defendants

in Vermont are asserted generally against, among others, the state itself, or various state and local Vermont police departments.  In a civil rights complaint, a "claim must at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." Guglielmo v. Cunningham, 811 F. Supp. 31, 35 (D.N.H. 1993) (quoting Dewey v. Univ. of N.H., 694 F.2d 1, 3 (1st Cir. 1982)).  Because Levesque has not identified any individual who is responsible for the harm alleged to have occurred in Vermont, I recommend that all of the claims in his complaint, alleging harm caused by unnamed Vermont defendants, be dismissed.[23]  Those claims are numbered 103, 105, 107-115, 117, 125-128, and 130 above.

II.  Claims Against New York Defendants

    A.   CCCF Claims

    A number of Levesque's claims, numbered 83-87 and 95-97 above, arise out of incidents occurring at CCCF.  With one exception, addressed below, none of these claims name any individual defendant.  As stated above, a civil rights complaint

_____

    [23]I recommend that these claims be dismissed without prejudice.  If Levesque seeks to resurrect any of his Vermont claims, naming individual defendants, he would be well-advised to do so in a court that possesses personal jurisdiction over those defendants.  See Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 24 (1st Cir. 2007) (plaintiff bears burden of establishing personal jurisdiction).

must set forth, at a minimum, who is responsible for the tortious acts alleged.  See Guglielmo, 811 F. Supp. at 35; Dewey, 694 F.2d at 3.  Accordingly, I recommend dismissal of all of the claims against unnamed CCCF defendants.[24]

### B.  Claims Against Individual Defendants in New York

#### 1.  Mr. Cumber

Levesque claims that Mr. Cumber, a CCCF employee, teased him by offering him a Band-Aid for his feet, when, in fact, he was in need of specialized footwear.  Teasing, however unprofessional, is not unconstitutional.  Accordingly, I decline to find any civil rights claim arose out of that incident.  Accordingly, I recommend the claim against Cumber, numbered 94 above, be dismissed.

#### 2.  Champlain Valley Physicians' Hospital

Levesque claims that he received inadequate care at the Champlain Valley Physicians' Hospital, which I presume to be the

---

[24]I recommend that the dismissal be without prejudice to refiling if Levesque seeks to name individuals responsible for the harms alleged.  Levesque would be well-advised to bring such an action in a court with personal jurisdiction over the New York defendants.

facility in New York he went to upon release from CCCF.  He has
alleged only that the hospital discharged him on foot despite his
disability, and forced him to go to a disgusting motel.  These
allegations are insufficient to state any claim against the
hospital.  I recommend, therefore, that Levesque's claim against
Champlain Valley Physicians' Hospital, numbered 89 above, be
dismissed as inadequately pleaded.

      3.   Judge Prevo and the Ellenburg Town Court

     Levesque seeks to sue Judge Prevo of the Ellenburg Town
Court in New York for improperly preventing Levesque's criminal
charges in that court to be resolved, and has asked this Court to
resolve or dismiss the charges pending against him there.[25]  The
Younger v. Harris abstention doctrine provides that federal
courts should abstain from enjoining pending state judicial
proceedings when: (1) there is an ongoing state proceeding which

_____

     [25]Levesque, in 09-cv-430-SM, has asked this court to remove
the criminal charges pending in New York to this court.  To
effect a removal of a criminal case, a plaintiff must file a
notice of removal in the federal district court "for the district
and division within which such action is pending."  See 28 U.S.C.
§ 1446(a).  Moreover, Levesque's claim is that he suffered due
process violations in the Ellenburg Town Court, and such claims,
as alleged by Levesque, cannot form the basis for removal.  See
Johnson v. Mississippi, 421 U.S. 213, 222 (1975).  I therefore
decline to construe Levesque's request for removal in his prayer
for relief as a notice of removal, as doing so would initiate a
pointless sequence of removal, transfer, and remand.

is judicial in nature; (2) important state interests are involved; and (3) the plaintiff will have an adequate opportunity in the state proceeding to raise the constitutional challenges presented by the federal lawsuit.  401 U.S. 37, 43-44 (1971); <u>see also</u> <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 603-05 (1975) (<u>Younger</u> is grounded in principles of comity and federal courts, ordinarily, should not interfere with state courts).  Absent extraordinary circumstances, abstention is mandatory, not discretionary, where the federal lawsuit would interfere in a matter that satisfies the three-part test for abstaining under <u>Younger</u>.  See <u>Rio Grande Cmty. Health Ctr., Inc. v. Rullan</u>, 397 F.3d 56, 68 (1st Cir. 2005).

"Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, <u>see</u> U.S. Const., art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." <u>Casa Marie, Inc. v. Super. Ct.</u>, 988 F.2d 252, 262 (1st Cir. 1993).  Federal court intervention can be countenanced only where a plaintiff can show there is no opportunity to raise the federal issues in a state court, a state statute under attack is "flagrantly and patently violative of express constitutional prohibitions in every

66

clause," or plaintiffs can show "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 53-54.

Levesque complains that Judge Prevo has denied him the opportunity to resolve a pending criminal proceeding.  This matter is therefore both judicial in nature and ongoing. Further, the resolution of criminal cases is unquestionably a matter of state importance.  Lastly, while Levesque claims Judge Prevo has failed to resolve his case, there is no indication that Levesque was denied the opportunity to litigate his objection to that failure in the New York state courts.  All three Younger factors are therefore present in the instant case, and this Court's abstention in the matter is mandatory, as no exceptional circumstances exist.  Accordingly, I recommend that the claim against Judge Prevo and the Ellenburg Town Court, numbered 99 above, be dismissed from this action.

### 4.   Claims Against Banks

Levesque claims that three banks in New York either declined to give him a loan secured by his New York property, or declined to loan him the entire amount he requested.  Levesque believes that the banks should have granted the loan and didn't because he had refused to do business with MVWC, or because of his

disability.  While Levesque obviously disagrees with the banks'
decisions to deny him loans, he has not pleaded sufficient facts
to show that the loan denial was based on his disability, or
pointed to any other legal theory upon which to assert the banks'
legal liability to him.  As no sufficiently pleaded cause of
action presents itself on the facts alleged, I recommend the
claims against the banks, numbered 91 and 92 above, be dismissed.

     C.   <u>No Individual Defendants Named</u>

The remaining claims alleged to have arisen in New York
against New York defendants fail to name individuals responsible
for the harm alleged.  The claims, numbered 88, 93, 98, 100, and
101 above, name the state itself, law enforcement agencies, a
university, and courts in New York.  I recommend that all of
these claims be dismissed for failing to name any individual
defendants.[26]

III. <u>Claims Arising Out of New Hampshire Criminal Case</u>

     A.   <u>Younger Abstention</u>

As previously discussed, this Court must abstain under
<u>Younger</u> where there is an ongoing state judicial proceeding,

---

[26]Once again, I recommend that the dismissal be without
prejudice to refiling if Levesque seeks to name individuals
responsible for the harms alleged, and I again encourage Levesque
to file any such action in a court with personal jurisdiction
over the New York defendants.

involving important state interests, and the plaintiff has an adequate opportunity to litigate the constitutional challenges raised here.  See Younger, 401 U.S. at 43-44; see also Huffman, 420 U.S. at 603-05.  Here, Levesque's complaints regarding his pretrial detention, the decision to hold him and continue his trial to determine his competency, and the allegation that he is being denied his right to a speedy trial are all related to his ongoing criminal matters in the Concord District Court.  Whether those cases ultimately result in a trial, a negotiated plea, or a dismissal, they are ongoing proceedings that are judicial in nature.  Furthermore, matters related to the detention of criminal defendants pretrial, the speed with which trials are held, and competency determinations are indisputably matters of important state interest.  Finally, nothing in the record indicates that Levesque has been or will be prevented from raising any of his concerns regarding bail, his trial, or any other matter relevant to his criminal proceedings in the state courts.  As all three Younger factors exist in this case, and I find no applicable exception to that doctrine in this case, I find that this Court is required to abstain from hearing Levesque's claims related to his ongoing criminal case.  I recommend that those claims, numbered 1-3, 5, and 8 above, be

dismissed from this action.

    B.    Malicious Prosecution

    Levesque asserts that the Concord District Court
prosecutor's office and the Merrimack County Attorney's office
have prosecuted him improperly and in furtherance of a "witch
hunt."   I construe these allegations as an attempt to assert
malicious prosecution claims against the prosecutors he has dealt
with in his pending New Hampshire criminal cases.

    A plaintiff asserting a malicious prosecution claim "must
allege that 'criminal proceedings were initiated against him
without probable cause and for an improper purpose and were
terminated in his favor.'"   Meehan v. Town of Plymouth, 167 F.3d
85, 88-89 (1st Cir. 1999) (quoting Landrigan v. City of Warwick,
628 F.2d 736, 745 n.6 (1st Cir. 1980)).   While Levesque has
alleged improper motives by prosecutors who have initiated
criminal proceedings against him, he has not demonstrated that
the proceedings were terminated in his favor.   Accordingly, as he
has failed to allege facts sufficient to support malicious
prosecution claims in this matter, I recommend the dismissal of
Levesque's malicious prosecution claim, numbered 7 above, from
this action.

    C.    Judicial Immunity

70

Judges have absolute immunity from a suit for monetary damages for harm allegedly incurred as a result of their judicial acts. See Stump v. Sparkman, 435 U.S. 349, 359 (1978). "This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding or how malicious the motive." Beck v. Plymouth County Super. Ct., 511 F. Supp. 2d 203, 206 (D. Mass. 2007) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989). Accordingly, to the extent that Levesque seeks to sue any judge in the Concord District Court for money damages, that judge is immune from suit. I recommend that Levesque's claims against any judge in the Concord District Court, numbered 3, 5, 6, and 9 above, be dismissed.

D.    Prosecutorial Immunity

Levesque charges the prosecutors in the Concord District Court with slandering him, pursuing him as part of a "witch hunt" and other misdeeds. "Prosecutors are immune from litigation for those activities closely related to the judicial phase of criminal proceedings for actions that are within the scope of their prosecutorial duties." Beck v. Plymouth County Super. Ct., 511 F. Supp. 2d 203, 206 (D. Mass. 2007) (citing Imbler v. Pachtman, 424 U.S. 409, 420 (1976)). Prosecutors maintain

immunity from suit even where they can be shown to have acted in bad faith.  See Celia v. O'Malley, 918 F.2d 1017, 1019 (1st Cir. 1990) (refusing to recognize a "bad faith exception" to the scope of prosecutorial immunity as defined in Imbler).  Because the Concord District Court prosecutors are immune from suit, I recommend that the claims against them, numbered 5-7 above, be dismissed.  For the same reason, I recommend dismissal of claim 132 against Assistant Merrimack County Attorney George Stewart.

IV.   Claims Against Private Actors

   A.   Claims Against Attorneys

Levesque has alleged that his New Hampshire attorneys, Donna Brown and Timothy Landry, have violated his Sixth Amendment right to the effective assistance of counsel, and that Attorney Brown engaged in gender discrimination in violation of the Fifth Amendment's Equal Protection Clause.  The United States Constitution, however, "erects no shield against merely private conduct, however . . . wrongful."  Blum v. Yaretsky, 457 U.S. 991, 1002 (1982).  A plaintiff claiming an infringement of his civil rights by individual defendants must establish that (i) the defendants deprived plaintiff of a right secured by the

72

Constitution or laws of the United States, and that (ii) the defendants acted under "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia."  42 U.S.C. § 1983; see Andresen v. Diorio, 349 F.3d 8, 13 (1st Cir. 2003).  In relation to the second requirement, a private actor can be held to be a state actor under only three circumstances: "(i) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (ii) where the private party has exercised powers that are 'traditionally the exclusive prerogative of the state,' or (iii) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert that the action of the private party must in law be deemed to be that of the state." Lewis v. Law-Yone, 813 F. Supp. 1247, 1254 (N.D. Tex. 1993) (quoting Blum, 457 U.S. at 1004); see also Jackson v. Metro. Edison Co., 419 U.S. 345, 357 (1974).

Court-appointed defense attorneys are not state actors for purposes of 42 U.S.C. § 1983.  Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Levesque's attorneys, therefore, are not state actors and no § 1983 claim can lie against them absent an

allegation of facts sufficient to allow this Court to treat the attorneys as state actors, which has not been presented here. Levesque has made only non-specific and vague assertions that his attorneys have acted in collusion with the state and against his wishes.  Such allegations are insufficient to demonstrate that either Attorney Brown or Attorney Landry have acted against him with the power of the state.  Accordingly, I recommend that all of the claims against Attorneys Brown and Landry, numbered 1, 2, and 4 above, be dismissed.  Similarly, I recommend dismissal of any claims intended against Attorneys Bacchus, and Hessler, numbered 129 and 133 above, as Levesque's allegations against these attorneys also fail to state any cognizable claim.

      B.   <u>Claims Against Other Private Defendants</u>

Levesque has alleged a number of civil rights claims against other private actors, including: Concord Hospital, Riverbend 24 Hour Emergency Services, pharmaceutical companies, and the University of Chicago.  As private actors, these defendants, like Attorneys Brown and Landry, are not subject to suit for a violation of Levesque's constitutional rights.  Accordingly, I recommend that the claims against these defendants, numbered 81, 82, and 131 above, be dismissed.

V.   <u>Conspiracy Claims</u>

Levesque asserts that many of the defendants he names have engaged in one or more conspiracies against him, in order that, among other things, he be deprived of his home, his property, his health, and his right to determine his own medical care. Levesque's conspiracy allegations are general, conclusory, and lack specificity and detail necessary to support the existence of a conspiracy. See Ashcroft, 129 S. Ct. at 1949. Accordingly, I recommend that all of Levesque's claims alleging that he has been victimized by a conspiracy, numbered 23, 58, 93, 118, and 131 above, be dismissed.

VI.  Establishment Clause Claim Regarding Psychiatric Medication

The Establishment Clause of the First Amendment proscribes governmental involvement in religion, either to advance or inhibit its practice in any form. See U.S. Const., amend. I (providing "Congress shall make no law respecting an establishment of religion"). The Establishment Clause prohibits the government from endorsing or suppressing religion, however tangentially. See County of Allegheny v. ACLU, Greater Pittsburgh Chapter, 492 U.S. 573, 591-95 (1989). To determine whether a particular governmental action violates the Establishment Clause, the Court applies a three-part inquiry: (1) whether the action has a secular purpose; (2) whether the

action's principal or primary effect is one that neither advances nor inhibits religion; and (3) whether the action avoids excessive governmental entanglement with religion.  See Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971); see also Zelman v. Simmons-Harris, 536 U.S. 639, 668 (2002) (reaffirming the Lemon test as a "central tool in our analysis of cases in this area") (O'Connor, J., concurring)).

The second and third questions have been fused into one, because the same evidence often answers both questions.  See Zelman, 536 U.S. at 668-69 ("the degree of entanglement has implications for whether a statute advances or inhibits religion"); Agostini v. Felton, 521 U.S. 203, 232 (1997) (combining excessive entanglement into the effects inquiry).  The analysis, therefore, assesses whether the challenged governmental act has a secular purpose and whether it affects religion in some way.

In this case, a consideration of the second Lemon inquiry resolves this issue.  In order to demonstrate a violation of the Establishment Clause, Levesque must establish that the defendants have endorsed a particular religion by coercing his participation in that religion.  See, e.g., Lee v. Weisman, 505 U.S. 577, 604 (1992) ("Government pressure to participate in a religious

76

activity is an obvious indication that the government is endorsing or promoting religion.") (Blackmun, J., concurring).

While Levesque characterizes his mental health treatment as coercive religious programming, the characterization alone does not make it so.  Levesque has, in fact, described an entirely secular medical treatment program.  Accordingly, any pressure exerted by any defendant to participate in that treatment program cannot constitute the establishment of religion.  The actions described by Levesque, therefore, do not violate the Establishment Clause.  Accordingly, I recommend that Levesque's claims based on a violation of his rights under the Establishment Clause of the First Amendment, numbered 37, 38, and 69 above, be dismissed.

VII. <u>Claims Asserting a Right to Prosecution</u>

Levesque alleges that his rights have been violated by the failure of various law enforcement authorities in Vermont and New Hampshire to bring criminal charges against those who have victimized him.  There is no cause of action under § 1983, however, for the failure to prosecute a crime, as there is no federal constitutional right to have criminal wrongdoers brought to justice.  <u>See</u> <u>Leeke v. Timmerman</u>, 454 U.S. 83, 87 (1981); <u>Nieves-Ramos v. Gonzalez-De-Rodriguez</u>, 737 F. Supp. 727, 728

77

(D.P.R. 1990) (citing <u>Linda R. S. v. Richard D.</u>, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another.")).  I therefore recommend that Levesque's claims alleging failure to prosecute, numbered 77, 90, and 104 above, be dismissed.

VIII. <u>Claims Against MCHC and SPU Employees</u>

    A.   <u>Incarcerative Status</u>

    Since his New Hampshire arrest in July 2009, Levesque has been a pretrial detainee, both at the MCHC and at SPU.  His claims relating to the conditions of his confinement, therefore, must be analyzed under the Fourteenth Amendment.  <u>See</u> <u>Mosher v. Nelson</u>, 589 F.3d 488, 493 n.3 (1st Cir. 2009) (citing <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002)); <u>see also</u> <u>Lyons v. Powell</u>, 838 F.2d 28, 29 (1st Cir. 1988) (per curiam) (rejecting an Eighth Amendment challenge to pretrial detention). Detainees have a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free of punishment.  <u>See</u> <u>Surprenant v. Rivas</u>, 424 F.3d 5, 15 (1st Cir. 2005) (citing <u>O'Connor v. Huard</u>, 117 F.3d 12, 15 (1st Cir. 1997)).  "'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'"

78

Martinez-Rivera v. Ramos, 498 F.3d 3, 9 (1st Cir. 2007) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977)).  However, challenged conditions or restrictions which can be rationally related to some legitimate administrative goal or security concern generally will not be deemed unconstitutional "punishment."  O'Connor, 117 F.3d at 15.  Because the Due Process Clause prohibits the infliction of punishment on a person prior to a judgment of conviction, the issue in evaluating claims by a pretrial detainee is ultimately whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment for the detainee's charged offense.  See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

    B.   Inadequate Medical Care

    The Eighth Amendment protects convicted prison inmates from prison officials acting with deliberate indifference to their serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831 (1994).  The Fourteenth Amendment, which protects the conditions of confinement for pretrial detainees, is at least as protective of a detainee's right to medical and mental health care as the Eighth Amendment.  See United States v. Ayala Lopez, 327 F. Supp.

2d 138, 144 (D.P.R. 2004) (citing, inter alia, Fischer v. Winter, 564 F. Supp. 281, 298 (N.D. Cal. 1983) ("Since sentenced inmates may be held under conditions that are punitive, while pretrial inmates may not be, the courts have said that the due process clause affords greater protection to unsentenced inmates than the Eighth Amendment affords to the convicted.")).  Therefore, to the extent I find that Levesque's allegations are sufficient to state a claim for an Eighth Amendment violation, I necessarily find that Levesque has alleged a violation of the Fourteenth Amendment.

To assert a viable cause of action for inadequate medical care under either the Eighth or Fourteenth Amendment, a prisoner must first state facts sufficient to allege that he has not been provided with adequate care for a serious medical need.  Farmer v. Brennan, 511 U.S. 825, 831 (1994); Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle, 429 U.S. at 106.  The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment.  See Estelle, 429 U.S. at 106.

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community,

tailored to an inmate's particular medical needs, and that are
based on medical considerations.  See United States v.
DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not
mean that an inmate is entitled to the care of his or her choice,
simply that the care must meet minimal standards of adequacy.
Deliberate indifference may be found where the medical care
provided is "so clearly inadequate as to amount to a refusal to
provide essential care."  Torraco v. Maloney, 923 F.2d 231, 234
(1st Cir. 1991).  Constraints inherent in a prison setting may
affect the choice of care provided, and may be relevant to
whether or not prison officials provided inadequate care with a
deliberately indifferent mental state.  See Wilson v. Seiter, 501
U.S. 294, 302 (1991).

A serious medical need is one that involves a substantial
risk of serious harm if it is not adequately treated.  See
Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003);
Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002)
(citing Farmer, 511 U.S. at 835-47); see also Gaudreault v.
Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining a serious
medical need as one "that has been diagnosed by a physician as
mandating treatment, or one that is so obvious that even a lay
person would easily recognize the necessity for a doctor's

attention") (internal citations omitted).

    1.  <u>MCHC</u>

Levesque alleges that while he was at the MCHC, two individuals responsible for his medical care, Judy and Paul Sylvester,[27] failed to provide him with adequate medical care. Specifically, he alleges that: (1) Judy and Paul gave him, or attempted to give him psychiatric medications, Zyprexa and Xanax, when they should have been providing him with appropriate sleep medication; (2) that he was not permitted to shower for days at a time, which rendered him unable to properly insure his skin health; (3) that he was given pencils to write with that were so small that writing with them exacerbated his skin condition; (4) that Judy prevented him from receiving food with his medication on two occasions, and that as a result, he spent those two nights vomiting; (5) that Judy and Paul tried to give him Haldol and Atavan without properly advising him regarding the medication;

_____

[27]There is also a reference in the pleadings to a Paul Wyman, a medical care provider either at MCHC or at SPU.  There are no independent claims alleging Wyman's liability that are sufficient to proceed against "Paul Wyman."  I presume that the "Paul" referred to in Levesque's pleadings, therefore, is Paul Sylvester.  I will direct service of certain claims on Paul Sylvester in the Order issued simultaneously with this Report and Recommendation.  If, in fact, Paul Wyman is the appropriate defendant to those claims, Levesque is directed to properly move to amend his complaint to reflect that the claims ordered to be served on Sylvester should instead be served on Wyman.

(6) that Judy created false information about Levesque to justify giving him medication that would cause him to be "dehumanized;" (7) that he had problems with his toe and a "multi-prong hair follicle" that were not treated at the MCHC; (8) that he was not provided with medically appropriate footwear that had been prescribed for him for a period of several months after his arrival at the MCHC; and (9) that the appropriate footwear, once received, was later taken from him by corrections officers.

Levesque also alleges that on one occasion, Officer Dempsey at the MCHC refused to give him food with his medication.

Levesque has alleged that he has a skin condition, EBWCS, that is severe enough to affect his ability to walk, write, and otherwise function.  Levesque asserts that his condition was severe enough that Trish, a nurse at MCHC, prescribed specialized footwear for him in August 2009.  Levesque has therefore, for purposes of preliminary review, alleged sufficient facts to assert a serious medical need requiring medical attention, of which the MCHC medical personnel were aware.  Further, while Levesque denies that he has a mental illness that requires psychotropic medication, he does not appear to dispute that, at least, he has a skin disorder and mental health needs related to

his sleep needs, distress levels, and "vulnerability."  To the extent that he required medication to treat these conditions, it further appears that the MCHC medical department recognized that need and provided, or attempted to provide some treatment, although Levesque disputes the adequacy of such measures.

Levesque's complaints that he was denied food with his medicine on three discrete occasions fail to state a claim for the denial of adequate medical care of a constitutional magnitude.  Levesque does not allege that any serious medical need of his was ignored as a result of the administration of medication without food.  That he suffered stomach upset three times is not sufficient to state a claim for deliberate indifference to a serious medical need.

Further, his claim that his pencils were small and caused him discomfort fails to state a claim that he was denied constitutionally adequate medical care.  As discussed elsewhere in this Report and Recommendation, Levesque's allegations that he was improperly given psychotropic medication as part of a conspiracy to medicate and dehumanize him are not adequate to support a claim for relief, and his conclusory allegations regarding Judy's retaliatory  motive for her conduct are similarly insufficient.  I find that Levesque's complaints about

84

treatment for his toe and hair follicle are not, as alleged, sufficiently serious to warrant the protection of the constitution.  I recommend, therefore, that the retaliation and inadequate medical care claims against MCHC numbered 16a, 18, 19a, 36, 44, and 45 be dismissed.

Levesque's claims, however, that he was denied sufficient showers to maintain medically necessary hygiene (claim numbered 12b above), that he was given medication without adequate information to enable him to give informed consent to take or refuse the medication (claims numbered 34 and 35 above), and that he was denied medically necessary footwear in a timely fashion (claim numbered 49a above), all allege that Levesque's serious need for medical and/or mental health care have been denied by MCHC medical officials.  In an Order issued simultaneously with this Report and Recommendation, I will direct that those claims be served on Judy and Paul Sylvester.[28]

_____

[28]At this time, Levesque has only provided the full name of Paul Sylvester.  Although I authorize these claims to proceed against Judy as well, Levesque must provide the Court with her full name before she can be served.  Upon service of this action on Sylvester, Levesque can serve him with interrogatories to obtain Judy's full name pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in

2.   <u>SPU</u>

Levesque claims that upon his arrival at SPU, he was in severe pain but was not seen by an appropriate medical professional or treated for his pain for three weeks.  When he did see a doctor, Dr. John Eppolito, the doctor failed to conduct a complete examination.  Despite failing to examine and evaluate Levesque's feet, Dr. Eppolito stated that Levesque had no problems with his feet and refused to authorize any treatment or accommodation for Levesque's skin condition.

Levesque further alleges that officials at SPU improperly gave him, or attempted to give him, Haldol or Atavan, without properly advising him regarding the medications, "played" with his prescriptions, and subjected him to bright lights and other restrictive conditions in a suicide watch suite for about one

> number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

Once Judy's full name is obtained, Levesque may file a motion to amend his complaint to add Judy as a defendant to these claims and the Clerk's office will effect service upon Judy, as directed in my Order directing service issued simultaneously with this Report and Recommendation.

week.  Levesque also states he was not treated for his toe and hair follicle problems, and alleges that due to the improper medical care he received at SPU, he may have developed a MRSA infection.

As I have construed Levesque's pleadings to allege that he suffered from a serious medical condition, EBWCS, and that condition caused him severe pain, I find that Levesque's allegations regarding Dr. Eppolito's failure to examine Levesque's feet, and failure to properly recognize and treat his skin condition, despite Levesque's pain, and previously determined need for, at a minimum, specialized footwear, state a claim for deliberate indifference to Levesque's need for medical care for his serious skin condition.  In an Order issued simultaneously with this Report and Recommendation, I will direct service of these inadequate medical care claims, numbered 55, 56a, and 71 above, against Dr. Eppolito.

Levesque has failed to name any individual at SPU responsible for any of his other claims of inadequate medical care at SPU.  Accordingly, I recommend that these claims, numbered 68, 70, and 72-74 above, be dismissed without prejudice to refiling should Levesque be able to state, with specificity, what SPU official took what action to deprive him of adequate

87

medical care.

    C.    Failure to Accommodate

    Title II of the ADA provides that "no qualified individual

with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity."  42 U.S.C. §

12132.  See United States v. Georgia, 546 U.S. 151, 153 (2006).

> Pursuant to the plain language of Title II, a plaintiff
> must establish: (1) that he is a qualified individual
> with a disability; (2) that he was either excluded from
> participation in or denied the benefits of some public
> entity's services, programs, or activities or was
> otherwise discriminated against; and (3) that such
> exclusion, denial of benefits, or discrimination was by
> reason of the plaintiff's disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

Title II of the ADA applies to inmates in correctional

facilities.  See Georgia, 546 U.S. at 154 (citing Pa. Dep't of

Corrs. v. Yeskey, 524 U.S. 206, 209-10 (1998)).  "[P]risons

provide inmates with many recreational 'activities,' medical

'services,' and educational and vocational 'programs,' all of

which at least theoretically 'benefit' the prisoners (and any of

which disabled prisoners could be 'excluded from participation

in')."  Pa. Dep't of Corrs., 524 U.S. at 210 (citing 42 U.S.C. §

12132).

Levesque alleges that his disabling skin condition requires that he be provided with special footwear, appropriate writing implements, and access to showers sufficient to enable him to maintain a certain level of cleanliness.  He alleges that both MCHC and SPU denied him these items, and have therefore violated the provisions of the ADA.  Accepting Levesque's factual allegations regarding these deprivations as true, I find that Levesque has sufficiently alleged that he was denied "the benefits of the services, programs or activities" of MCHC and SPU when he was denied appropriate footwear and access to showers, to state a claim against those two institutions.  As to the writing implements issue, however, Levesque's prolixity with a pencil in the documents filed in this court belies any claim that he has been denied services or otherwise discriminated against in that regard by the MCHC.  In my Order issued simultaneously with this Report and Recommendation, I will direct that Levesque's ADA claims regarding showers and footwear, numbered 12c, 13, 49b, and 56 above, be served on MCHC and SPU.  I recommend dismissal of the ADA claim concerning the pencils, numbered 16b above.

D.   Denial of Access to the Courts

Prisoners have a constitutional right of access to the

courts that affords them access to the tools necessary to challenge their criminal cases, criminal convictions and sentences directly or collaterally, to file habeas petitions, or to challenge the conditions of their confinement through civil rights actions.  See Lewis v. Casey, 518 U.S. 343, 345 (1996). In order to state a claim for denial of access to the courts under 42 U.S.C. § 1983, a prisoner must demonstrate that the prison officials' actions "hindered his efforts to pursue a legal claim" that he is constitutionally entitled to pursue during his incarceration.  Lewis, 518 U.S. at 351.  During his incarceration, Levesque is entitled to legal resources which, in the aggregate, enable him to defend his criminal charges and to pursue civil rights actions complaining of the conditions of his confinement.  See Bounds v. Smith, 430 U.S. 817, 832 (1977).

     1.  MCHC

Levesque complains that officials at the MCHC have denied him adequate access to the law library and legal materials on the basis that they have made a determination that the discrimination claims he seeks to litigate are frivolous.  In addition to legal materials, Levesque has been denied access to: adequate paper, writing utensils, photocopies and postage, adequate access to a phone to call his attorney, access to property he intends to use

as evidence in his civil case, his legal notes, and transportation to a pretrial conference in this Court in the matter of <u>Levesque v. State of Vermont</u>, 09-cv-055-SM.  Levesque claims that his ability to pursue one or more civil rights claims has been hindered by these deprivations.  Levesque has, however, failed to name any MCHC official responsible for depriving him of access to the courts.  Accordingly, I recommend that the claims alleging a denial of access to the courts at MCHC, numbered 27, 29-31, 45, 47, 52, and 53 above, be dismissed without prejudice to refiling should Levesque be able to state, with specificity what MCHC official took what action to deprive him of the ability to litigate a specific claim or claims.

> 2. <u>SPU</u>

Levesque alleges that, at SPU, he has been denied adequate access to the property and legal materials he needs to properly prosecute his civil rights claims.  Levesque has failed to name any individual SPU official responsible for this deprivation.  As to his claim that legal documents were taken away by a SPU officer, Levesque has failed to allege sufficient facts regarding the nature of the property and legal materials at issue to demonstrate how his lack of access to them has hindered his ability to pursue a legal claim.  I recommend, therefore, that

the denial of access claims arising out of Levesque's
incarceration at SPU, numbered 59 and 60 above, be dismissed
without prejudice to refiling should Levesque be able to state,
with specificity what SPU official took what action to deprive
him of the ability to litigate a specific claim or claims in
court.

     E.    Conditions of Confinement

    "A pretrial detainee's claim that he has been subjected to
unconstitutional conditions of confinement implicates Fourteenth
Amendment liberty interests." Surprenant, 424 F.3d at 19; see
Cameron v. Tomes, 990 F.2d 14, 18 (1st Cir. 1993) ("It is settled
that those who are confined by the state, for whatever reason,
are entitled under the Constitution to food, clothing, medical
care, and reasonable efforts to secure physical safety."). To
establish that conditions of confinement are unconstitutional, a
pretrial detainee must first demonstrate that, when viewed
objectively, "the conditions of confinement deny him the minimal
measure of necessities required for civilized living."
Surprenant, 424 F.3d at 19. Second, the plaintiff must show that
the defendant against whom the violation is alleged was
deliberately indifferent to the inmate's health or safety. Id.
at 18-19. Further, as discussed above, when evaluating claims by

a pretrial detainee, the Court will consider whether the
conditions of confinement were reasonably related to a legitimate
state interest or were intended instead as punishment for the
detainee's charged offense.  See id. at 13; Collazo-Leon, 51 F.3d
at 317.

      1.   Verbal Abuse and Threats

Acts of verbal harassment, however reprehensible,
unprofessional, or inappropriate, do not violate the federal
constitution.  See Jane Doe 5 v. City of Haltom City, 106 Fed.
Appx. 906, 908 (5th Cir. 2004) (verbal sexual harassment does not
violate a detainee's constitutional rights); McBride v. Deer, 240
F.3d 1287, 1291 n.3 (10th Cir. 2001); Jean-Laurent v. Wilkerson,
438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006) (verbal harassment does
not rise to the level of a constitutional violation for pretrial
detainee); Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me.
2005).  Accordingly, I recommend that all of Levesque's claims
alleging verbal abuse or harassment, numbered 20, 41-43, 46, 57,
and 72 above, be dismissed from this action.

      2.   Isolation and Recreation

Levesque complains that he was subjected to isolation and
lockdown for up to 23½ hours a day at SPU, under the same
conditions as inmates serving time in isolation as a disciplinary

sanction.  Levesque claims the improperly severe isolation had no
legitimate purpose, but was designed to punish him for
complaining of discrimination against him due to his disability
and for filing grievances.  Levesque further claims that his stay
in isolation was the result of Judy's false statements to SPU
officials that Levesque was violent, which she made in order to
"dehumanize" Levesque.

Prisons may impose restrictions on pretrial detainees if
those restrictions are related to a governmental purpose other
than punishing the inmate for a crime before conviction.  See
Bell v. Wolfish, 441 U.S. 520, 538-39 (1979).  On the face of
Levesque's pleadings, however, there is no indication that there
was a legitimate and non-punitive purpose to house him in the
described conditions of confinement.  Levesque was at SPU to
undergo a competency evaluation as a pretrial detainee.  Nothing
in the present record indicates he was there for disciplinary or
other behavioral difficulties.  Levesque's assertion that he was
housed in punitive isolation for six weeks at SPU while he
underwent a competency evaluation suffices to state a claim for
unconstitutionally punitive conditions of confinement, in
violation of the Fourteenth Amendment.  See Tucker v. Wall, No.
CA 07-406 ML, 2010 WL 322155, at *13 (D.R.I. Jan. 27, 2010)

94

(finding that pretrial detention in maximum security segregation with denial of out-of-cell and recreation time that was not in response to legitimate institutional concern can state Fourteenth Amendment violation where housing restrictions appeared to be punitive in nature) (citing <u>Boulanger v. U.S. Bureau of Prisons</u>, No. 06-308, 2009 WL 1146430, at *10 (D.N.H. Apr. 24, 2009)).  In the Order issued simultaneously with this Report and Recommendation, I will direct service of this claim, numbered 64

above, on Stevenson, the individual Levesque identifies as responsible for his housing placement at SPU.

Levesque also alleges he was improperly confined in overly restrictive housing at MCHC.  He has, however, failed to name any defendant responsible for his housing placement at that facility. Accordingly, I recommend that the improper isolation claims alleged to have occurred at the MCHC, numbered 17, 19c, 21, and 33 above, be dismissed from this action without prejudice to refiling should Levesque be able to name an individual responsible for his allegedly improper housing assignment at MCHC.

     3.   <u>Meals, Security, Sanitation, and Light</u>

Levesque complains that certain protocols regarding the service of food and security were not followed at the correctional facilities where he was incarcerated.  Levesque further states that on one occasion, a SPU corrections officer improperly turned off his light, that his cell was dirty, and that he was once provided with a broken chair.  Levesque does not state that these omissions were intended to be punitive, or that he was in any way harmed by these alleged deviations from protocol.  Further, Levesque has not named any individual responsible for any of these alleged failures.  I find that Levesque has failed to state any claim for the alleged meal, security protocol, and light issues and I recommend dismissal of these claims, numbered 19b, 24, 26, 40, 51, and 67 above.

In addition, Levesque has alleged that on one occasion, water contaminated with sewage was poured under his cell door at MCHC.  He has not alleged any facts pointing to any individual MCHC defendant who may have been responsible for this conduct.  I recommend dismissal of this claim, numbered 25 above, without prejudice to Levesque's ability to refile it should he be able to state with specificity which MCHC official was responsible for this incident.

4.   Showers

96

Levesque alleges that he has been denied showers at both SPU and at MCHC for several days at a time.  While the lack of access to hygiene products and showers may constitute a constitutional violation if the combination or duration of the conditions reaches a certain degree of severity, "[t]he case law as to whether any one of these conditions, by itself, might be serious enough to work a constitutional violation is in some disarray." Surprenant, 424 F.3d at 19-20 (collecting cases reaching different conclusions).  Levesque claims the denial of access to the shower was beyond the scope of acceptable limitations on hygiene.  I cannot determine, at this stage of the proceedings, that Levesque's allegations necessarily fail to state a constitutional violation.  Levesque identifies Stevenson as the official responsible for the conditions of his confinement at SPU.  Accordingly, in my Order issued simultaneously with this Report and Recommendation, I will direct that the claim of inadequate access to showers at SPU, numbered 64 above, be served on Stevenson.  Levesque has failed to name an official responsible for the denial of showers at MCHC.  Accordingly, I recommend that the inadequate shower claim arising at the MCHC, numbered 12a above, be dismissed without prejudice to refiling should Levesque be able to identify an appropriate defendant to

this claim.

     5.   Telephone Access

Levesque alleges that he was denied adequate access to a telephone at SPU and at the MCHC, particularly in regard to his efforts to obtain bail money from an international bank account. The right of a pretrial detainee to make phone calls is subject to reasonable restrictions. See Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997) (citing Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994)). Levesque does not state that he was denied all access to the phone, only that he was denied access to unfettered use of the phone because he was overutilizing his "kiosk" privileges. Levesque has not stated that he was denied any other means of contacting the banks in question, i.e., by having a family member contact the bank or by contacting the bank by mail. Levesque's allegations regarding the restrictions on his phone use do not describe unreasonable limitations on such use. Accordingly, I recommend that his claims alleging denial of access to a telephone, numbered 22 and 61 above, be dismissed.

     6.   Grievance Procedures

Levesque claims that he wrote and submitted grievances at both MCHC and SPU which were not answered to his satisfaction. Levesque has not alleged that he was denied access to grievance

procedures, only that he was denied a response or the desired
result when he utilized the procedures.  The failure to produce
desired results, however, does not render a grievance procedure
inadequate or inaccessible.  I recommend that his claims alleging
such a deprivation, numbered 28 and 63 above, be dismissed.[29]

### 7.  Dr. Kinsler

Levesque complains that Dr. Kinsler, in conducting his
competency evaluation at SPU, defrauded the State of New
Hampshire by collecting money for a fraudulent examination.  Even
if Levesque's assertion is true, he does not have standing to
raise this claim.  "To establish standing, a plaintiff must
present an injury that is concrete, particularized, and actual or
imminent; fairly traceable to the defendant's challenged action;
and redressable by a favorable ruling."  Horne v. Flores, ___
U.S. ___, ___, 129 S. Ct. 2579, 2592 (2009).  In a standing
inquiry, "the critical question" is whether plaintiff "has
alleged such a personal stake in the outcome of the controversy

---

[29]By recommending dismissal of this clam, I express no
opinion as to whether or not the grievance procedures at MCHC and
SPU will ultimately prove to have been provided to Levesque to an
extent that renders them "available" for purposes of satisfying
the exhaustion requirement of the Prison Litigation Reform Act,
42 U.S.C. § 1997e(a) (proper exhaustion of administrative
remedies is required as to those remedies that are "available").

as to warrant *his* invocation of federal-court jurisdiction." Id.
(quoting Summers v. Earth Island Inst., 555 U.S. ___, ___, 129 S.
Ct. 1142, 1148-49 (2009) (internal quotations omitted)) (emphasis
in original).  Levesque has not established that he suffered any
injury caused by Dr. Kinsler's alleged fraud in billing the State
for a deficient competency examination.  Further, even if this
Court were to find the existence of such a fraud, no relief
available to Levesque would address or remedy that fraud.
Accordingly, I find that Levesque's claim regarding Dr. Kinsler's


allegedly fraudulent behavior, numbered 62 above, be dismissed
from this action.

> 8.  Retaliation

Levesque claims that he was denied food with his pain
medication by Judy at MCHC in retaliation for refusing to take
Zyprexa, and was held in isolation at SPU in retaliation for
complaining about discrimination against him due to his
disability, and for filing grievances.  Levesque further claims
that his transfer to SPU was in fact motivated by Judy's desire
to retaliate against him for refusing to sign an authorization
allowing MCHC officials to obtain his medical records, and that

he was unnecessarily subjected to restrictive suicide watch conditions in retaliation for failing to sign medical releases. To allege a retaliation claim in a federal civil rights action, Levesque must allege: (1) that the conduct which led to the alleged retaliation was protected by the exercise of a right guaranteed to him by the federal constitution or other federal law, (2) some adverse action at the hands of prison officials, and (3) a causal link between the exercise of his protected right and the adverse action.  See Price v. Wall, 428 F. Supp. 2d 52, 55 (D.R.I. 2006) (setting out elements of a retaliation claim); see also McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (discussing pleading requirements for retaliation claims by prisoners); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) ("[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."); Oropallo v. Parrish, No. 93-1953, 1994 WL 168519, at *3 (D.N.H. May 5, 1994) (citing Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980) ("[A]ctions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms.") (internal citation omitted)).

101

Filing civil complaints regarding discrimination, filing grievances in prison, and refusing to sign a medical release are all acts that are protected by the First Amendment.  I accept Levesque's contention, for purposes of preliminary review, that his housing situation and the denial of food with pain medication, would qualify as adverse acts taken against him. Levesque's retaliation claim fails, however, in his allegations regarding the causal link between the exercise of his First Amendment rights, or his refusal to take Zyprexa, and the adverse acts.  Levesque offers purely conclusory statements regarding the motivation of Judy and Stevenson.  While he cites "Emily" as saying that a light would be kept on in his SPU suicide suite for six weeks if he did not sign a medical release, this statement, by itself, does not imply that keeping the light on was retaliatory or punitive.  It is the more reasonable inference that the light was kept on to ensure the safety of a person reported to be violent, for lack of more complete medical records.  Levesque's transfer to more comfortable conditions after being held for only one week in suicide watch, even though he apparently continued to refuse to sign a release form, further undermines the plausibility of a retaliation claim.

In general, Levesque baldly states that the acts he alleges

are adverse are retaliatory without identifying any act,
statement, or other factual circumstance that would allow this
Court to find that any such nexus exists.  Accordingly, I
recommend that these retaliation claims, numbered 18, 32, 39, 50,
66, and 72 above, be dismissed from this action.

IX.  <u>Property Claims</u>

Levesque complains about certain losses of his property and
seeks monetary damages to compensate him for the items taken or
destroyed during his detention in New Hampshire.  Claims alleging
the theft, damage, loss or other misappropriation of property are
not actionable under 42 U.S.C. § 1983 where, as here, there is an
adequate post-deprivation state remedy available.  <u>Hudson v.
Palmer</u>, 468 U.S. 517, 533 (1984); <u>see</u> N.H. Rev. Stat. Ann. §§
541-B:9(II) & (IV), and 541-B:14 (providing a post-deprivation
means of recouping property loss attributable to the state).
Accordingly, I recommend dismissal of Levesque's claims alleging
property loss, numbered 15, 47, and 59 above.

X.   <u>Eleventh Amendment</u>

Levesque has sued all fifty states and a number of state
agencies, including the Concord District Court, the ADO, the
Merrimack County Superior Court, the University of Vermont, SUNY
Buffalo, the Vermont State Police, the State of Vermont's

103

Commission on Mental Health, and SPU, in one or more of the actions filed.  Section 1983 suits for damages against states, state agencies, or state officers in their official capacities are barred by the Eleventh Amendment unless the state has expressly waived immunity.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a state nor agencies acting under its control may be subject to suit in federal court); Negron-Almeda v. Santiago, 579 F.3d 45, 52 (1st Cir. 2009) (citing Wang v. N.H. Bd. of Reg. in Med., 55 F.3d 698, 700 (1st Cir. 1995)).  Because I find they are immune from Levesque's damages claims against them, I recommend that the claims asserted against states and state agencies in any of Levesque's lawsuits, numbered 75-80, 90, 104, 118, 121, 125, and 134 above, be dismissed.[30]

XI.  Municipal Liability

Levesque has named a number of municipal agencies as defendants to this action, including the Concord City prosecutors' office, the Merrimack County Attorney's Office, MCHC, and the Concord Housing Authority.  Municipalities and local government entities are "persons" within the meaning of §

[30]I have directed, in my simultaneous Order, that SPU be served with a claim that it has violated Levesque's rights under the ADA.

1983.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690

(1978).  Under New Hampshire law, counties, cities, towns, and

their agencies, are considered local governmental units.  See

N.H. Rev. Stat. Ann. ("RSA") 507-B:1 (defining "governmental

unit" as "any political subdivision within the state including

any county, city, town . . ., but [not including] the state or

any department or agency thereof.").  In order to maintain an

official capacity action against the municipal defendants named,

under § 1983, Levesque must ground the claim upon an

unconstitutional municipal custom or practice and two

requirements must be met.  "First, the custom or practice must be

attributable to the municipality, i.e., it must be 'so well

settled and widespread that the policymaking officials of the

municipality can be said to have either actual or constructive

knowledge of it yet did nothing to end the practice.'"  Miller v.

Kennebec County, 219 F.3d 8, 12 (1st Cir. 2000) (quoting

Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)).

Second, the custom must have been the cause of and "the moving

force" behind the deprivation of constitutional rights.  Wood v.

Hancock County Sheriff's Dep't, 354 F.3d 57, 64 (1st Cir. 2003)

(citing Miller, 219 F.3d at 12).

     Levesque has not asserted any facts that demonstrate that

the municipal defendants named engaged in a custom or policy of allowing or enabling their employees to violate Levesque's rights in the manner described in his complaints.  I find, therefore, that Levesque has not stated any claim against any municipal defendant upon which relief might be granted, and I recommend that all such claims asserted by Levesque, numbered 5, 7, 8, and 76 above, be dismissed.[31]

XII. Claims Insufficiently Stated

    A.    Claims Failing to Adequately Identify a Defendant

    In his claims numbered 6, 11, 12a, 14-17, 22, 24-31, 33, 38-40, 45, 47, 50-54, 58-61, 65, 67-70, 72-76, 78-80, 83-88, 93, 95-98, 100, 101, 103, 105, 107-118, 125, 127, 128, 130, 131, and 134 above, Levesque has failed to identify any specific individual defendant responsible for the damages or injury alleged. Accordingly, I recommend that those claims be dismissed on that basis, in addition to any other applicable basis discussed in this Report and Recommendation.  This dismissal, if approved, would be without prejudice to Levesque refiling a cognizable

_____

[31]I have directed, in my simultaneous Order, that the MCHC be served with a claim that it has violated Levesque's rights under the ADA.

claim properly identifying a defendant or defendants responsible for the adverse acts alleged and stating, with specificity, what each identified defendant did that violated his rights.

     B.   <u>Claims Lacking Specificity</u>

In filing a civil rights complaint, a "claim must at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." <u>Guglielmo</u>, 811 F. Supp. at 35 (quoting <u>Dewey</u>, 694 F.2d at 3; <u>see</u> <u>Kadar Corp. v. Milbury</u>, 549 F.2d 230, 232-33 (1st Cir. 1977) (dismissal of defendant warranted where complaint does no more than name an individual as a defendant, and contains no allegations linking that individual with the injury alleged).  In his claims numbered 9, 11, 14, 38, 40, 43, 51, 65, 70, 80, 88, 92, 102, 103, 105, 127, 129, and 131-134 above, Levesque has named defendants and generally asserted that they have wronged him in some way, but has failed to provide sufficient specific facts about how he was harmed by the defendants' actions, instead setting forth conclusory statements and allegations.  I therefore recommend that these claims be dismissed as inadequately pleaded.

     C.   <u>Defendants Against Whom No Facts Supporting Any Claim Are Asserted</u>

Levesque has identified a number of defendants by name

against whom he has failed to state any claim or allege any facts from which a claim could be inferred.  Those defendants are the United States; the 47 states other than New Hampshire, New York and Vermont; the Concord Police Department; MVWC; the Shelburne Police Department; the Vermont State Police; the Rutland County Sheriff's Department; the Town of Ellenburg, New York; and the New Hampshire Public Defender.  I recommend that each of these defendants be dismissed from any of Levesque's actions for this reason as well as any other reason identified to dismiss any particular defendant in the body of this Report and Recommendation.

XIII. <u>Claim for Injunctive Relief Against Congress</u>

Levesque has requested that this Court issue an injunction requiring Congress to adjourn or pass legislation that would force the closure of all oil, gas, coal, nuclear, and wood-fired plants and require that those plants be converted to hydroelectric dam systems utilizing Levesque's hydroelectric synchronizalation system, in order to preserve the environment. Congress is an independent branch of government, protected by the Speech or Debate Clause of the federal constitution.  See U.S. Const., Art. I, section 6; <u>Eastland v. U.S. Servicemen's Fund</u>,

421 U.S. 491, 502 (1975) ("The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently."); <u>Curnin v. Town of Egremont</u>, 510 F.3d 24, 30 (1st Cir. 2007).  This protection extends to injunctive relief.  <u>See</u> <u>Eastland</u>, 421 U.S. at 503; <u>Curnin</u>, 510 F.3d at 30.  Accordingly, I recommend the denial of Levesque's request for an injunction against the United States Congress.

XIV. <u>Claims Filed on Behalf of Jason</u>

In case no. 09-cv-418-SM, Levesque has asserted claims on behalf of both himself and another inmate named Jason.  Levesque, proceeding pro se, cannot assert claims on behalf of anyone other than himself.  <u>See</u> 28 U.S.C. § 1654; <u>see</u> <u>also</u> LR 83.2(d) ("Persons who are not members of the bar . . . will be allowed to appear before this court only on their own behalf"); LR 83.6(b) ("Pro se parties must appear personally . . . . A pro se party may not authorize another person who is not a member of the bar of this court to appear on his or her behalf."); <u>Herrera-Venegas v. Sanchez-Rivera</u>, 681 F.2d 41, 42 (1st Cir. 1982) (restricting a "jail house lawyer" to assisting, not representing, other inmates).  Accordingly, I will not consider any claim contained in Levesque's pleadings to have been asserted on behalf of Jason.

XV.  <u>Claims Relating to Guardianship Proceeding</u>

    A.  <u>Sheila Zakre</u>

Levesque challenges the adequacy of representation provided by appointed counsel Sheila Zakre during the guardianship proceeding.  Specifically, Levesque asserts that Zakre did not call two favorable witnesses and obtained a damaging statement from his mother, and that she did so in collusion with the Assistant Merrimack County Attorney.  Levesque has asserted that Zakre is liable to him for violating his constitutional rights in connection with her representation of him.

Zakre served as appointed counsel, pursuant to the statutory right to counsel set forth in RSA 464-A:6.  Zakre is not a state actor susceptible to suit under section 1983, however.  The allegations regarding her collaborating with opposing counsel in obtaining a statement from Levesque's mother are insufficient to render her into a state actor who could be held liable under section 1983.  Accordingly, claim 138, naming Zakre as a defendant, should be dismissed.

    B.  <u>Ian Berkley</u>

Levesque asserts that Ian Berkley is liable for damages for slandering Levesque and perjuring himself on the witness stand during the guardianship proceeding.  Berkley testified under oath

regarding statements made to him by Clinton County, New York officials.  Section 1983 does not provide a damages remedy against police officers who provide testimony that is claimed to be slanderous or false.  See Briscoe v. LaHue, 460 U.S. 325, 345-46 (1983).  Accordingly, claim 136, asserted against Berkley, should be dismissed.

     C.   Due Process Violations

Levesque has asserted that his due process rights were violated in the guardianship proceedings, and that he is therefore entitled to injunctive relief to terminate the guardianship.  Pursuant to the Younger abstention doctrine, discussed above, this court should abstain from enjoining the guardianship proceeding.  That proceeding is ongoing as Levesque has filed an appeal of the guardianship appointment.  An important state interest, regarding the capacity of a person to make his own medical decisions in New Hampshire, is at issue.  Further, Levesque has offered no basis for this court to find that his due process claims cannot be adequately addressed in the state courts.  Accordingly, abstention is mandatory.  The court should dismiss claim 137, seeking to enjoin the appointment of a guardian for Levesque, based on his claim that he suffered a violation of his right to due process in the guardianship

proceeding.

D.   <u>Nancy Gallagher</u>

Levesque asserts that Nancy Gallagher, MCHC Clinical Mental Health Manager, is liable to him for discussing his medical condition with his mother without his consent.  In attempting to substantiate his claim, Levesque cites an affidavit executed by Gallagher, which states in pertinent part, "Based on information provided by [Levesque's] mother, he was previously taking psychotropic medication under the direction of physicians at the Vermont State Hospital."  Levesque contends that Gallagher's conversation with his mother violated his right to privacy under HIPAA, the Fourteenth Amendment, and the State constitution.

HIPAA does not create a private right of action for damages.  <u>See</u> <u>Miller v. Nichols</u>, 586 F.3d 53, 59 (1st Cir. 2009).  Furthermore, the cited portion of Gallagher's affidavit indicates that Levesque's mother provided information to Gallagher, not the converse.  Levesque provides no further factual allegations to support his claim that Gallagher disclosed his medical records to any person without his authorization outside of the guardianship proceeding.  Accordingly, claim 135 should be dismissed for failure to state a claim.

XVI. <u>Motion to Certify Case as a Class Action</u>

In a number of the pending cases, Levesque has filed a motion to certify the case as a class action.[32]  It is well-settled that parties to a lawsuit cannot be represented by anyone other than themselves or a member of the bar.  <u>See</u> 28 U.S.C. § 1654; <u>see</u> <u>also</u> LR 83.2(d) ("Persons who are not members of the bar . . . will be allowed to appear before this court only on their own behalf"); LR 83.6(b) ("Pro se parties must appear personally . . . . A pro se party may not authorize another person who is not a member of the bar of this court to appear on his or her behalf."); <u>see</u> <u>also</u> <u>Herrera-Venegas</u>, 681 F.2d at 42.  Pro se litigants cannot "fairly and adequately protect the interests of the class," as required by Fed. R. Civ. P. 23(a)(4).  <u>See</u> <u>Avery v. Powell</u>, 695 F. Supp. 632, 643 (D.N.H. 1988) (denying pro se plaintiff's motion for class certification).  Accordingly, I recommend that each of Levesque's motions for class action certification be denied.

<u>Conclusion</u>

In an Order issued simultaneously with this Report and

---

[32]The Motion to Certify Case as a Class Action is docketed as follows: 09-cv-248-PB (document no. 7); 09-cv-418-SM (document no. 13); 09-cv-419-PB (document no. 12); 09-cv-427-PB (document no. 14); 09-cv-429-PB (document no. 13); 09-cv-430-SM (document no. 11); 09-cv-434-PB (document no. 7); 09-cv-435-SM (document no. 12); 09-cv-437-JL (document no. 10); 09-cv-438-SM (document no. 7); and 09-cv-453-JD (document no. 6).

Recommendation, I will direct service of the claims alleging inadequate medical and mental health care, failure to accommodate in violation of the ADA, and unconstitutional isolation and denial of showers at SPU, numbered 10, 12b, 12c, 13, 34, 35, 49a, 49b, 55, 56a, 56b, 64, and 71, above, against defendants Paul Sylvester, Dr. John Eppolito, and Ken Stevenson, MCHC, and SPU. I recommend that all of other claims and defendants be dismissed, and that the motions for class certification be denied.  If approved, this recommendation will result in the dismissal of claims numbered  1-9, 12a, 14-33, 36-48, 50-54, 57-63, 65-70, and 72-134 above.

    I further recommend that the claims going forward be consolidated in case No. 09-cv-437-JL, as that case contains each of the claims to be served.  To the extent that these claims are repeated in the other actions docketed above, they are repetitive, and need not proceed in more than one action. Consolidation is appropriate where common questions of law or fact are present, where convenience and judicial economy will be furthered by consolidation, and where the consolidation will not cause prejudice to any party.  See Gonzalez-Quiles v. Cooperativa de Ahorro y Credito de Isabela, 250 F.R.D. 91, 93 (D.P.R. 2007)

114

(citing Fed R. Civ. P. 42(a)) (other citations omitted).  Here, I
find that the claims being served all arise out of the same
series of facts, transactions, or events.  No party will be
prejudiced by joining the claims into one action, as the parties
will each have the opportunity to fully litigate each cognizable
claim that Levesque has presented to the Court.  To the extent
that Levesque may have sought different remedies in his separate
actions, his complaint, going forward, may be amended to assert a
claim for the particular relief appropriate to the claim.  If the
recommendation to consolidate is approved, docket numbers 09-cv-
248-JD, 09-cv-418-SM, 09-cv-419-PB, 09-cv-427-PB, 09-cv-429-PB,
09-cv-430-SM, 09-cv-434-PB, 09-cv-435-SM, 09-cv-438-SM, 09-cv-
453-JD, 10-cv-040-SM, 10-cv-041-JD, and 10-cv-049-PB will all be
dismissed in their entirety for failing to state any claim upon
which relief might be granted.   See LR 4.3(d)(2)(A)(i).

     At this time, this Court has made no comment on the volume
of Levesque's pleadings in this Court in the above-captioned
cases, and in the other seven cases filed by Levesque that are
presently pending before the Court and have not been addressed in
this Report and Recommendation.[33]  Nor has this Court, to date,

---

     [33]I am recused in 09-cv-426-PB and 09-cv-428-JL.  Levesque's
newer actions, 10-fp-101, 10-fp-102, 10-fp-107, 10-fp-114, and
10-fp-123, have not yet been preliminarily reviewed.

made any recommendation that Levesque be enjoined from filing civil actions here. It is clear, however, that Levesque's many lawsuits, containing repetitive claims against, in some cases, defendants who have already been sued and dismissed in this Court, approaches, if not reaches, the use of the federal district court in an abusive fashion. Accordingly, Levesque should consider himself warned that this Court will, if necessary, take action to enjoin the future filing of frivolous actions that are clearly not appropriate in this venue, or have previously been litigated, to prevent Levesque from abusing the proper use of the resources of this Court.[34] That said, if Levesque intends to amend his complaint or claims, or file anything regarding any of the claims that have been addressed in this Report and Recommendation, he should do so by filing an appropriate motion to amend in 09-cv-437-JL or by properly objecting to this Report and Recommendation.

_____

[34]Levesque should also note that, as a litigant filing in forma pauperis, he is potentially subject to the Prison Litigation Reform Act's "three strikes" rule, see 28 U.S.C. § 1915(g), which generally precludes an inmate from proceeding in forma pauperis if, while incarcerated, he has filed at least three prior federal lawsuits that were dismissed as frivolous, malicious, or for failing to state a claim. It appears that, if this Report and Recommendation is approved, Levesque will have "three strikes" as defined by the statute, limiting his ability to file in forma pauperis actions in the future.

Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauth. Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:     May 12, 2010

cc:       Andre Levesque, pro se


JM:jba